# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-2599

_____

| | | |
|---|---|---|
| Stephen (Scott) Jasa; Ivy Jasa, | * | |
| | * | |
| Petitioners - Appellees, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Millard Public School District No. 17, | * | |
| | * | |
| Respondent - Appellant. | * | |

_____

Submitted: January 27, 2000

Filed: March 23, 2000

_____

Before McMILLIAN, BOWMAN, and LOKEN, Circuit Judges.

_____

LOKEN, Circuit Judge.

A victim of spinal meningitis, Sean Jasa is a severely handicapped child who needs constant medical care and supervision. Until January 1997, Sean lived with his parents, receiving special educational services at home from the Millard Public School District under an individualized education plan developed pursuant to the Individuals with Disabilities Education Act (the IDEA), 20 U.S.C. §§ 1400 *et seq.*, and the Nebraska Special Education Act, Neb. Rev. Stat. §§ 79-1110 *et seq.* In January 1997, Sean's parents moved him for non-educational reasons to the Ambassador, a licensed

nursing facility. The Ambassador is located in Omaha's Westside Public School District, a few miles from the Jasas' home in the Millard Public School District.

After Sean's move to the Ambassador, the Millard District declined to continue to provide educational services at his place of residence. The Jasas protested, claiming that Sean has a right to those services at the Ambassador under both the IDEA and state law. After an administrative hearing, the state hearing officer denied the Jasas' claims because they had unilaterally placed Sean at the Ambassador. The Jasas petitioned for judicial review in a Nebraska state court. The Millard District removed the case to the District of Nebraska, invoking that court's jurisdiction under 20 U.S.C. § 1415(i)(2)(A).[1] Though agreeing that Sean was being provided a free appropriate public education at home, the district court nonetheless held that the IDEA and Nebraska law require that the Millard District provide special education services at the Ambassador. The Millard District appeals. We reverse.

## I. The IDEA Claim

The IDEA was enacted "to ensure that all children with disabilities have available to them a free appropriate public education." 20 U.S.C. § 1400(d)(1)(A). It is undisputed that the Millard District was providing and remains willing to provide Sean a free appropriate public education at its own facilities, or at the Jasas' home. Sean's parents placed him at the Ambassador for non-educational reasons. They acted unilaterally, that is, without the consent or approval of the Millard District or Sean's individualized education program team. The Jasas contend that the Millard District must now provide Sean special education services at the Ambassador. This contention

---

[1] In accord with the IDEA's "stay-put" provision, the Millard District has continued to furnish on-site educational services for Sean at the Ambassador during the pendency of this litigation. See 20 U.S.C. § 1415(j).

is foreclosed by the 1997 IDEA amendments as construed by this court in Foley v. Special Sch. Dist., 153 F.3d 863 (8th Cir. 1998).

The 1997 amendments resolved the question whether the IDEA requires public school districts to provide special education services to children with disabilities whose parents voluntarily place them in private schools. Congress decided that a "proportionate amount of Federal funds" must be made available for such students, but the IDEA "does not require a local educational agency to pay for the cost of education . . . at a private school or facility if that agency made a free appropriate public education available to the child and the parents elected to place the child in such private school or facility." 20 U.S.C. §§ 1412(a)(10)(A)(i)(I) & (C)(i); see 34 C.F.R. § 300.403(a). Thus, when parents unilaterally place a child with disabilities in a private school or facility, they have "no individual right under IDEA to the special education and related services in question [and therefore] no right to a federal court decree mandating that those services be provided at a particular location." Foley, 153 F.3d at 865; see 34 C.F.R. § 300.454(a)(1). The Jasas argue the 1997 amendments do not govern this case because Sean was not placed in the Ambassador for educational reasons. We disagree. Section 1412(a)(10)(C)(i) expressly applies to unilateral placement in a "private school *or facility*." The Jasas suggest that "facility" means only an educational facility, but that is contrary to the word's plain meaning. It would also render the word "facility" coterminous with "school," violating the principle of statutory construction that avoids creating mere surplusage.

Because the Millard District was providing Sean a free appropriate public education at home, the IDEA provides the Jasas no right to a decree compelling the Millard District to provide special education services at the Ambassador. Accordingly, their IDEA claim must be dismissed, and the district court's award of attorneys' fees must be reversed. See Warner v. Independent Sch. Dist. No. 625, 134 F.3d 1333, 1336-37 (8th Cir.), cert. denied, 119 S. Ct. 67 (1998).

## II. The State Law Claim

The district court ruled, *sua sponte,* that Sean is entitled to special education services at the Ambassador because the Nebraska Special Education Act requires the Millard District to provide "visiting teachers for homebound children with disabilities." Neb. Rev. Stat. § 79-1129(1)(c). This state law theory was neither argued to nor considered by the state hearing officer. Accordingly, the Millard District argues the Jasas failed to preserve the issue for judicial review by exhausting their administrative remedies. We disagree. The Jasas exhausted the available state administrative remedy, and they urged the hearing officer to grant them relief under the Nebraska Special Education Act. The issue is whether they waived a claim or theory by not specifically arguing for state law relief under § 79-1129(1)(c). Under Nebraska law, "[t]he rule on administrative waiver of claims later raised before the courts is a flexible one." Ashby v. Civil Serv. Comm'n, 492 N.W.2d 849, 853 (Neb. 1992). By not expressly relying on § 79-1129(1)(c), the Jasas arguably deprived the reviewing court of input from both the Nebraska Department of Education and the hearing officer as to the proper interpretation of § 79-1129(1)(c). But interpreting the statute is a question of law on which, in Nebraska, "a reviewing court is obligated to reach its conclusions independent of the determination made by [an] administrative agency." George Rose & Sons Sodding & Grading Co. v. Nebraska Dep't of Revenue, 532 N.W.2d 18, 23 (Neb. 1995). In these circumstances, we conclude this state law issue was not waived.

Turning to the merits of the issue, we agree with the Millard District that the district court misconstrued § 79-1129(1)(c). The statute provides in relevant part:

> § 79-1129. (1) The school [district] shall provide one of the following types of services to children with disabilities for whom the school district is the school district of residence:

-4-

[Subsections (a) and (b) provide for payment of transportation expenses when children with disabilities must travel to receive educational services];

(c) Provide visiting teachers for homebound children with disabilities . . . ;

(d) Provide correspondence instruction approved by the Commissioner of Education; or

(e) Provide any other method of instruction approved by the Commissioner of Education.

First, we note that § 79-1129(1)(c) does not *mandate* provision of on-site teaching services to "homebound" children. That is simply one of the *authorized* methods for providing a free appropriate public education to children with disabilities. Second, moving past the question whether Sean Jasa is "homebound" at the Ambassador within the meaning of § 79-1129(1)(c),[2] we note that the Nebraska Department of Education's latest regulations construe the Special Education Act as consistent with the 1997 IDEA amendments on this issue. That is, state law:

> does not require a school district to pay for the cost of education, including special education and related services, of a child with a disability at a nonpublic school or facility if that school district made [a free appropriate public education] available to the child and the parents elected to place the child in a nonpublic school or facility.

_____

[2]The plain meaning of the term "homebound" — underscored in the context of a statutory scheme in which the family residence determines which school district must provide educational services, see Neb. Rev. Stat. § 79-1123 — counsels against its application to a student residing at a nursing facility outside that school district.

Neb. Admin. Code tit. 92, ch. 51, § 015.02A. Reading § 79-1129(1)(c) and (e) in conjunction with this regulation, we conclude the Millard District complied with the statute by making a free appropriate public education available to Sean at his home. The regulation confirms that state law, like the IDEA, does not require the Millard District to provide those same educational services at another private location unilaterally selected by Sean's parents.

The judgment of the district court is reversed, and the case is remanded with instructions to deny the Jasas' petition for judicial review.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.