# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1765

_____

T.F.; G.F.; S.F., a minor, by his mother     *
and next friend, G.F.,                       *
                                             *
    Plaintiffs - Appellants,            *
                                             *  Appeal from the United States
    v.                                  *  District Court for the
                                             *  Eastern District of Missouri.
Special School District of St. Louis         *
County; Missouri Department of               *
Elementary and Secondary Education,          *
                                             *
    Defendants - Appellees.             *

_____

Submitted: January 11, 2006
Filed:  June 2, 2006

_____

Before LOKEN, Chief Judge, McMILLIAN[*] and MELLOY, Circuit Judges.

_____

LOKEN, Chief Judge.

The parents of S.F., a student with educational disabilities, unilaterally placed their son in out-of-state private residential schools after the Special School District

_____

[*]The Honorable Theodore McMillian died on January 18, 2006. This opinion is being filed by the remaining judges of the panel pursuant to 8th Cir. Rule 47E. The opinion is consistent with the views expressed by Judge McMillian at the conference following the oral argument.

of St. Louis ("the District") refused to place S.F. in a full-time residential program. The family commenced these proceedings seeking relief under the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*, on the ground that the District had denied S.F. a free appropriate public education. A Missouri hearing panel and the district court[1] denied all relief. The family appeals the denial of their claim for reimbursement of the out-of-state private school tuition. We review this mixed question of law and fact *de novo*. Missouri Dep't of Elem. & Secondary Educ. v. Springfield R-12 Sch. Dist., 358 F.3d 992, 998 (8th Cir. 2004). But we must give "due weight" to the outcome of the administrative proceedings and must be "careful to avoid imposing [our] view of preferable educational methods upon the States." Board of Educ. v. Rowley, 458 U.S. 176, 206-07 (1982). Applying this deferential standard, we agree with the district court that the District provided S.F. a free appropriate public education. We therefore affirm.

## I.

S.F. suffers from disabling psychological conditions that have been diagnosed as including pervasive developmental disorder, oppositional defiant disorder, obsessive compulsive disorder, and attention deficit/hyperactivity disorder. His educational assessments include language impaired, learning disabled in written expression, and "educational autism." S.F. attended local public schools through the fourth grade, participating in mainstream classrooms and receiving several hours of special education services per week under individualized education programs ("IEPs") developed by the District. Behavioral problems developed in the third grade and continued in the fourth grade. Though his fourth grade teacher recommended that S.F. move on to fifth grade, his parents instead enrolled him in the Churchill School, a private school for children with learning disabilities. S.F. performed well

---

[1]The HONORABLE CATHERINE D. PERRY, United States District Judge for the Eastern District of Missouri.

at Churchill in the fifth grade, but his behavior deteriorated in the sixth grade. His parents then enrolled him at Metropolitan School, another private school for children with learning disabilities. The parents did not use the IEP process in placing S.F. at Churchill and then at Metropolitan.

S.F. attended Metropolitan for seventh grade. His academic performance was satisfactory but behavior problems persisted. Metropolitan told the parents that S.F. should attend a different school for eighth grade but agreed he could attend Metropolitan the first semester while the parents arranged a different placement. S.F. was sent home or suspended for bad behavior so often during the first half of eighth grade (the fall of 2001) that he was essentially home schooled. The parents withdrew S.F. from Metropolitan at the end of that semester and sought services from the District, which helped arrange an interim homebound instruction program for the second half of eighth grade. At the end of that semester, S.F.'s special education teachers said that he had progressed academically and was well-behaved.

In early 2002, the District completed a re-evaluation of S.F. and began discussing an IEP for the upcoming ninth grade school year with his parents. The parents argued that a full-time residential program was the only way S.F. could receive a free appropriate public education. When the District disagreed, the parents asked the Missouri Department of Elementary and Secondary Education ("the Department") for a due process hearing. The District completed its proposed IEP on May 27, 2002. The plan called for S.F. to spend fourteen hours per week in Project Achieve at S.F.'s local public high school and twelve and a half hours at Epworth Center, a nearby private facility, with an additional four hours of language therapy, social work, and psychological counseling.

Unhappy with the IEP, and convinced that S.F. needed a full-time residential program, the parents enrolled S.F. at Pathways School, a private residential institution in Pennsylvania. S.F. was at Pathways from June until November 2002, when the

school decided it was not a good fit because S.F. had not progressed and had negative interactions with other students. The parents then enrolled S.F. in the Chamberlain School, a private residential facility in Massachusetts. In February 2003, S.F. and his parents amended their request for a due process hearing, seeking reimbursement for tuition and other expenses at Churchill, Metropolitan, Pathways, and Chamberlain.[2]

After a hearing, the three-member administrative panel unanimously denied relief. The panel first denied the claim for reimbursement of tuition at Churchill and Metropolitan on the ground that the District was providing S.F. a free appropriate public education when the parents withdrew him from public school after fourth grade. The parents sought judicial review of that decision but abandoned this claim in the district court. The panel then denied the claim for reimbursement of tuition at Pathways and Chamberlain on the ground that the May 2002 IEP provided S.F. a free appropriate public education. In reviewing this decision, the district court allowed the parents to supplement the administrative record and granted the District's motion to join the Department as a defendant. See Springfield, 358 F.3d at 998, 1000-02. The court then granted defendants' motion for summary judgment, giving "due weight" to the findings of the educational experts on the administrative panel and concluding that the May 2002 IEP was reasonably calculated to provide S.F. some educational benefit. The family appeals that decision.

## II.

The IDEA as amended in 1997 "does not require a local educational agency to pay for the cost of education . . . at a private school or facility if that agency made a free appropriate public education available to the child and the parents elected to place the child in such private school or facility." Jasa v. Millard Pub. Sch. Dist. No. 17, 206 F.3d 813, 815 (8th Cir. 2000), quoting 20 U.S.C. § 1412(a)(10)(C)(i).

_____

[2]The tuition at Chamberlain is $100,000 per year.

Therefore, parents who unilaterally "enroll their child in private school without the approval of the public school district do so with the risk they will not receive reimbursement for their costs." Fort Zumwalt Sch. Dist. v. Clynes, 119 F.3d 607, 611-12 (8th Cir. 1997), cert. denied, 523 U.S. 1137 (1998).

A child receives a free appropriate public education if he receives "personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction." Rowley, 458 U.S. at 203. The IDEA requires that public school districts offer eligible children "instruction and supportive services reasonably calculated to provide some educational benefit." Springfield, 358 F.3d at 999 n.7. The statute also requires that students with disabilities be educated in the "least restrictive environment," 20 U.S.C. § 1412(a)(5)(A), reflecting a "strong preference" that disabled children attend regular classes with non-disabled children and a presumption in favor of placement in the public schools. Independent Sch. Dist. No. 283 v. S.D., 88 F.3d 556, 561 (8th Cir. 1996). "[C]hildren who can be mainstreamed should be mainstreamed, if not for the entire day, then for part of the day; similarly, children should be provided with an education close to their home, and residential placements should be resorted to only if these attempts fail or are plainly untenable." Evans v. Dist. No. 17, 841 F.2d 824, 832 (8th Cir. 1988).

The focus of this appeal is whether the District's May 2002 IEP offered S.F. a free appropriate public education in the ninth grade. But the context is unusual. S.F.'s parents unilaterally withdrew S.F. from the public schools four years earlier, when they placed him at Churchill, a private school, for the fifth grade. The hearing panel concluded that the District provided S.F. a free appropriate public education in the fourth grade. That ruling is not challenged on appeal. Thereafter, the Churchill and Metropolitan private schools could not deal with S.F.'s behavioral problems. S.F.'s experiences at Churchill and Metropolitan led his parents to conclude that he could only receive meaningful educational benefits through placement in a full-time residential program. But the District and its IEP team were not part of this process.

-5-

Only when S.F. was in effect expelled from Metropolitan during eighth grade did the parents turn for help to the District, which had always been willing to provide S.F. placement in its public schools. The immediate result was an interim homebound program in which, according to his special education teachers, S.F. advanced academically and was well-behaved.

Based on its re-evaluation and S.F.'s progress in the homebound program, the District again proposed a public school IEP in May 2002. As the district court noted, this IEP "offered S.F. a unique combination of services that he had not previously experienced." Project Achieve offered small classes to minimize S.F.'s problematic interactions with other students and one-on-one instruction of the kind which helped S.F. in the homebound program, supervised by a teacher experienced in educating children with disabilities. The program included therapeutic elements not offered at Churchill or Metropolitan and speech and language pathology instruction to help S.F.'s written expression. Offering the program at S.F.'s local public high school provided an opportunity to take mainstream classes if he progressed. The additional program at Epworth offered small classes, staff experienced in dealing with children with similar disabilities, and therapy programs designed to address S.F.'s educational needs and behavioral problems. Epworth has treated many students with pervasive developmental disorders, including educational autism.

On appeal, the family argues that the May 2002 IEP was not sufficiently tailored to S.F.'s unique needs because the District did not adequately research his experiences at Churchill and Metropolitan and did not communicate with S.F.'s mental health care providers in deciding not to offer a full-time residential program. But this is not a case where all the experts "reached the conclusion that a residential placement is necessary in order for [S.F.] to get an education." Indep. Sch. Dist. No. 284 v. A.C., 258 F.3d 769, 777 (8th Cir. 2001). The District's IEP team provided S.F. a free appropriate public education through the fourth grade, were denied that opportunity in the fifth through eighth grades, and then proposed a unique

combination of public school special education services for the ninth grade. The experts on the administrative panel found that the IEP focused on S.F.'s individual needs and provided him a free appropriate public education. We "must defer to the judgment of education experts who craft and review a child's IEP so long as the child receives some educational benefit and is educated alongside his non-disabled classmates to the maximum extent possible." Gill v. Columbia 93 Sch. Dist., 217 F.3d 1027, 1038 (8th Cir. 2000).

S.F.'s parents rejected the IEP, concluding that only a full-time residential placement would provide their son "meaningful" education benefit. But "IDEA mandates individualized 'appropriate' education for disabled children, it does not require a school district to provide a child with the specific educational placement that [his] parents prefer." Blackmon v. Springfield R-XII Sch. Dist., 198 F.3d 648, 658 (8th Cir. 1999). The May 2002 IEP offered unique services tailored to S.F.'s needs. That may not have satisfied S.F.'s parents, but it satisfied the requirements of IDEA. As we said in Evans, 841 F.3d at 832:

> There was no guarantee that the programs proposed by Millard [Public Schools] would have accommodated Christine. However, the school district should have had the opportunity, and to an extent had the duty, to try these less restrictive alternatives before recommending a residential placement.

The judgment of the district court is affirmed.

_____