# United States Court of Appeals
### For the Eighth Circuit

_____

No. 16-1918
_____

I.Z.M., by and through his parents and natural guardians, et al.

*Plaintiffs - Appellants*

v.

Rosemount-Apple Valley-Eagan Public Schools,
Independent School District No. 196, et al.

*Defendants - Appellees*

------------------------------

Council of Parent Attorneys and Advocates, Inc.

*Amicus on Behalf of Appellants*
_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis
_____

Submitted: February 8, 2017
Filed: July 14, 2017
_____

Before LOKEN, COLLOTON, and KELLY, Circuit Judges.
_____

LOKEN, Circuit Judge.

I.Z.M. suffers from severe vision problems, a disability entitling him to a "free appropriate public education" ("FAPE") under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* For ninth grade, I.Z.M. attended Eastview High School, part of Independent School District No. 196 ("the District"), consisting of the public schools in Rosemount, Apple Valley, and Eagan, Minnesota. One FAPE requirement is "special education and related services . . . provided in conformity with the [child's] individualized education program" ("IEP"). 20 U.S.C. § 1401(9)(D). I.Z.M.'s IEP provided that he "will use Braille for all classroom assignments and instruction" and specified other supplemental aids and services to be provided. See § 1414(d)(1)(A)(i)(IV), (d)(3)(B)(iii). Upset with the District's perceived failures in providing these services, I.Z.M. and his parents, L.M. and T.M.,[1] filed a complaint with the Minnesota Department of Education. After a four-day evidentiary hearing, a state Administrative Law Judge issued a thirty-nine-page Order and supporting Memorandum concluding that the District provided I.Z.M. a FAPE and dismissing the complaint.

I.Z.M. then filed this action in federal court for judicial review of the ALJ's decision, as the IDEA authorizes. See 20 U.S.C. § 1415(i)(2). The Complaint joined non-IDEA claims for relief under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*, and § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. The district court[2] granted the District's motions for judgment on the administrative record on the IDEA claim and for summary judgment on the non-IDEA claims. I.Z.M. appeals, arguing the court committed errors of law in dismissing each claim. Reviewing these issues of law *de novo*, we affirm.

---

[1]I.Z.M. brings this lawsuit by and through his parents. We use the term "I.Z.M." to refer individually to the disabled child and collectively to appellants. We use the parents' initials only when referring to them individually.

[2]The Honorable Susan Richard Nelson, United States District Judge for the District of Minnesota.

# I. IDEA Issues.

**A.**  The ALJ rejected I.Z.M.'s claim that the District failed to provide a FAPE in five distinct ways.  In the district court, I.Z.M. challenged the ALJ's decision on only two issues, so the others need not be considered.  The ALJ stated the two issues:

> Whether the School District consistently provided accessible, accurate and timely instructional material, especially in Braille, such that the lack of materials denied the Student access to involvement and the ability to make progress in the general education curriculum and to make progress on his IEP goals.
>
> Whether the School District timely provided functioning assistive technology devices and maintained, repaired or replaced those devices as needed such that the lack of assistive technology denied the Student access to involvement and the ability to make progress in the general education curriculum and to make progress on his IEP goals.

I.Z.M. and his parents testified that the District failed to provide accessible instructional materials to I.Z.M. in a timely manner as well as instruction enabling him to improve his Braille skills.  In her thirty-nine page decision, the ALJ explained at length why I.Z.M. failed to meet his burden to prove the denial of a FAPE by a preponderance of the evidence.  See M.M. ex rel. L.R. v. Special Sch. Dist. No. 1, 512 F.3d 455, 458-59 (8th Cir.), cert. denied, 555 U.S. 979 (2008).  The ALJ found that "the provisions in the IEP were largely, although not perfectly, implemented." Regarding access to Braille materials, although the District did not provide I.Z.M. Brailled materials one hundred percent of the time, the ALJ found "very little evidence of times when materials were not available in some accessible format." Most failures involved not entire textbooks, but short assignments within I.Z.M.'s capacity to read with alternative aids and even large print.  Regarding provision of assistive technology, the ALJ found that, although problems arose, "[t]he number of issues the Student had could be expected given the number and complexity of the

-3-

devices the Student was provided," and District staff "were almost always immediately responsive to the issues."

Credibility findings were critical to the ALJ's determination. The ALJ found that I.Z.M. "tended to generalize and . . . exaggerat[e] the issues that he had at school." The ALJ found there were "times when acrimony and accusations [by L.M.] depleted staff time and energy and took time away from supporting the student." When witness testimony conflicted, the ALJ credited the District's witnesses. Based on this testimony, the ALJ found that I.Z.M. was capable of reading Braille, but often chose not to do so, and concluded his lack of progress in reading Braille[3] did "not negate the fact that he received significant educational benefit from his participation and progress in his classes at the School District." I.Z.M. "continued to make progress in the regular education curriculum and even in Honors classes,"[4] and "met, and often exceeded, the ability to communicate with the proficiency of his peers."

The ALJ found "that the School District implemented the Student's IEP such that the Student received educational benefit." The District "took all reasonable steps to provide instructional materials to the Student in accessible formats and at the same time as the other children received instructional materials." I.Z.M. failed to prove that any lack of accessible materials denied him "access to involvement and the ability to

---

[3]One IEP goal was for I.Z.M. to "increase his average [Braille] reading rate from 80 to 95 words per minute." Over the course of I.Z.M.'s ninth-grade year, his Braille reading speed dropped from 80 to 40 words per minute.

[4]In May 2015, near the end of the ninth-grade year, I.Z.M.'s grade point average was 3.337 and he ranked 333 out of 580 students in his class. In his first quarter, I.Z.M. received an A in Academic Prep, Choir, and Independent Fitness; a B+ in Earth Science, Honors American Government, and Honors Geometry; and a P in Honors English. In his second quarter, he received an A in Academic Prep and Choir; a B+ in Wellness; a C+ in Honors American Government, Honors Earth Science, and Honors Geometry; and a P in Honors English.

make progress in the general educational curriculum and to make progress on his IEP goals." Based on these detailed findings, the ALJ concluded that the District provided I.Z.M. with a FAPE and complied with its obligations under the IDEA and state law. I.Z.M. then commenced this lawsuit.

**B.** In an IDEA case such as this where there are no procedural issues, the statute authorizes judicial review of the state hearing officer's "determination of whether the child received a [FAPE]." 20 U.S.C. § 1415(f)(3)(E)(i); see §§ 1415(b)(6) and (i)(2)(A); Board of Educ. v. Rowley, 458 U.S. 176, 204-05 (1982).[5] A FAPE "consists of educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child 'to benefit' from the instruction." Rowley, 458 U.S. at 188-89. Whether the District provided I.Z.M. with a FAPE is reviewed *de novo*. See M.M., 512 F.3d at 458. The reviewing court "must give 'due weight' to the outcome of the administrative proceedings." T.F. v. Special Sch. Dist. of St. Louis Cty., 449 F.3d 816, 818 (8th Cir. 2006), quoting Rowley, 458 U.S. at 206-07. On appeal, district court factual findings "are binding unless clearly erroneous." Gill v. Columbia 93 Sch. Dist., 217 F.3d 1027, 1035 (8th Cir. 2000).

The district court independently reviewed the entire record before the ALJ, provided a thorough summary of the evidence, and relied on the ALJ's credibility determination when the testimony of District witnesses conflicted with that of I.Z.M. and his parents. The court granted the District's motion because: (1) significant evidence showed the District took steps to provide I.Z.M. accessible instructional materials in a timely manner; (2) to the extent the District may have imperfectly complied with IEP requirements, the IDEA does not require perfection; and (3) I.Z.M.

---

[5]As the Court noted in Rowley, what is now § 1415(b)(6) also authorizes complaints concerning "any matter relating to the identification, evaluation, or educational placement of the child." There are no such issues in this case. I.Z.M. challenges only the District's implementation of an appropriate IEP.

received an educational benefit from the services the District provided, as reflected by his grades. To the extent the evidence showed a lack of progress on I.Z.M.'s Braille reading speed, the district court agreed with the ALJ that this was more likely due to I.Z.M.'s persistence in reading visually rather than tactually.

**C.** On appeal, I.Z.M. argues the district court applied the wrong legal standards in upholding the ALJ's decision. First, with respect to the IEP provision requiring Braille instruction, I.Z.M. argues that the Minnesota Blind Persons' Literacy Rights and Education Act, Minn. Stat. § 125A.06, imposed on the District an "absolute obligation," enforceable in an IDEA lawsuit, to provide instruction in Braille reading and writing that enables each blind student to communicate with the same level of proficiency expected of the student's peers. Second, with respect to the IEP provision requiring accessible instructional materials, I.Z.M. argues that a federal Department of Education regulation, 34 C.F.R. § 300.172, requires strict compliance that is not satisfied by a determination merely that the student made some educational progress. We reject both contentions and affirm dismissal of I.Z.M.'s IDEA claims.

**1.** I.Z.M.'s first contention is based on the well-recognized principle that, if state law raises the standard for a FAPE, then students can enforce the heightened standard in an action under the IDEA. <u>Gill</u>, 217 F.3d at 1035. The Minnesota Blind Persons' Literacy Rights and Education Act provides in relevant part: "Instruction in Braille reading and writing must be sufficient to enable each blind student to communicate effectively and efficiently with the same level of proficiency expected of the student's peers of comparable ability and grade level." Minn. Stat. § 125A.06(d). The operative language is instruction "sufficient to enable" the blind person to communicate proficiently. I.Z.M. argues, with no supporting Minnesota case law or agency interpretation, that the statute imposes an "absolute obligation" on the District. In other words, I.Z.M. contends, the Minnesota statute and therefore the IDEA are violated if, after receiving Braille instruction called for in the IEP, the blind student is *unable* to communicate with the level of proficiency of his peers.

-6-

We conclude that Minn. Stat. § 125A.06(d), by its plain language, does not impose a heightened standard that burdens school districts with an absolute obligation to *guarantee* that each blind student will use the Braille instruction provided to attain a specific level of proficiency. Rather, the obligation enforceable under the IDEA is to provide, if the IEP so requires, instruction that is "sufficient to enable" the child to attain the specified level of proficiency. That is consistent with generally applicable IDEA standards. See Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. Re-1, 137 S. Ct. 988, 1001 (2017) (IDEA "requires an educational program reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances"); K.E. ex rel. K.E. v. Indep. Sch. Dist. No. 15, 647 F.3d 795, 809 (8th Cir. 2011) (student's specialized services not deficient if they were "*sufficient to enable* her to achieve academic progress"). As the Supreme Court observed in Endrew F., "the statement [in Rowley] that the Act did not 'guarantee any particular level of education' simply reflects the unobjectionable proposition that the IDEA cannot and does not promise 'any particular [educational] outcome.' No law could do that -- for any child." 137 S. Ct. at 998 (citations omitted).

In this case, the ALJ found that the District provided Braille instructions and materials, though not always in a timely manner; that I.Z.M. was capable of reading Braille, but often chose not to do so; that his lack of progress in reading Braille did "not negate the fact that he received significant educational benefit from his participation and progress in his classes at the School District"; and that he "met, and often exceeded, the ability to communicate with the proficiency of his peers," the attainment standard in Minn. Stat. § 125.06(d). Though I.Z.M. disagreed with these findings and conclusions, and argued to the district court that the ALJ's decision "is not supported by the evidence," I.Z.M. does not raise this issue on appeal.

**2.** A Department of Education regulation provides that, to receive federal funds, state educational agencies "must ensure that all public agencies take all reasonable steps to provide instructional materials in accessible formats to children

with disabilities who need those instructional materials at the same time as other children receive instructional materials." 34 C.F.R. § 300.172(b)(4). I.Z.M. argues that this regulation creates a heightened "strict" compliance standard that must govern IDEA lawsuits. I.Z.M. cites no case supporting this contention, and the plain language of the regulation -- public agencies should take "all reasonable steps" -- is consistent with our prior cases, applying the Supreme Court's decision in Rowley and holding that "a school need not maximize a student's potential or provide the best possible education at public expense." Park Hill Sch. Dist. v. Dass, 655 F.3d 762, 766 (8th Cir. 2011) (quotation omitted); see CJN v. Minneapolis Pub. Schs., 323 F.3d 630, 642 (8th Cir.) (the IDEA does not "guarantee that the student actually make any progress at all"), cert. denied, 540 U.S. 984 (2003). After oral argument, the Supreme Court again took up the IDEA substantive requirements first addressed in Rowley, concluding that "[t]o meet its substantive obligation under the IDEA, a school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." Endrew F., 137 S. Ct. at 999. That again is consistent with reading the regulation as requiring "all reasonable steps," not perfect results. Here, the ALJ cited the regulation and expressly concluded that the District "took all reasonable steps to provide instructional materials in accessible formats in a timely manner."

### III. ADA and Rehabilitation Act Claims.

Title II of the ADA prohibits public entities from discriminating based on disability in services, programs, or activities. 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance," 29 U.S.C. § 794(a). These statutes "provide[] the same rights, procedures, and remedies against discrimination." Mo. Prot. & Advocacy Servs., Inc. v. Carnahan, 499 F.3d 803, 812 (8th Cir. 2007).

-8-

I.Z.M. alleges the District violated these statutes by failing to: (1) ensure that communications with I.Z.M. were as effective as those with other students; (2) provide timely auxiliary aids and services; (3) give primary consideration to I.Z.M.'s requests for Braille materials; (4) offer reasonable modifications to prevent discrimination; and (5) provide educational opportunities to I.Z.M. equal to those given other students. I.Z.M. argues on appeal that the district court erred in granting summary judgment dismissing these claims.

The first issue is whether I.Z.M.'s ADA and § 504 claims are precluded by our decision affirming the dismissal of his fully exhausted IDEA claims. In <u>Independent School District No. 283 v. S.D. by J.D.</u>, we affirmed a district court decision that ADA and § 504 claims were precluded, explaining:

> When that [IDEA] process produces an administrative decision that is upheld on judicial review under IDEA, principles of issue and claim preclusion may properly be applied to short-circuit redundant claims under other laws.

88 F.3d 556, 560 n.3, 562 (8th Cir. 1996) (citations omitted). I.Z.M.'s categorical contention that these non-IDEA claims cannot be precluded because they are governed by different legal standards is without merit. "Minor variations in the application of what is in essence the same legal standard do not defeat preclusion." <u>Smith v. Bayer Corp.</u>, 564 U.S. 299, 312 n.9 (2011). Thus, preclusion applies if "resolution of the IDEA claims necessarily resolved" the non-IDEA claims. <u>S.D.</u>, 88 F.3d at 562.

As the district court noted, we have held that a disabled student's § 504 and ADA claims of "unlawful discrimination" are *not* precluded if they are "wholly unrelated to the IEP process." <u>M.P. ex rel. K. & D.P. v. Indep. Sch. Dist. No. 721</u>, 439 F.3d 865, 868 (8th Cir. 2006). Here, on the other hand, I.Z.M.'s specific claims of unlawful discrimination all grew out of or were intertwined with allegations that the District failed to properly implement his IEP, allegations that were necessarily

-9-

resolved in rejecting his IDEA claims. Putting this preclusion issue aside, the district court concluded, "even if Plaintiffs' non-IDEA claims are not entirely precluded by the judgment in favor of the School District on the IDEA claim, they fail as a matter of law because Plaintiffs have not demonstrated the existence of a genuine issue of material fact regarding the School District's bad faith or gross misjudgment."

"We have consistently held that where alleged ADA and § 504 violations are based on educational services for disabled children, the plaintiff must prove that school officials acted in bad faith or with gross misjudgment." B.M. ex rel. Miller v. South Callaway R-II Sch. Dist., 732 F.3d 882, 887 (8th Cir. 2013) (quotation omitted).[6] This rule "reflects what we believe to be a proper balance between the rights of handicapped children, the responsibilities of state educational officials, and the competence of courts to make judgments in technical fields." Monahan v. Nebraska, 687 F.2d 1164, 1171 (8th Cir. 1982). "So long as the state officials involved have exercised professional judgment, in such a way as not to depart grossly from accepted standards among educational professionals, we cannot believe that Congress intended to create liability under § 504." Id. I.Z.M. and the Council of Parent Attorneys and Advocates as *amicus curiae* vigorously argue that Monahan was misguided and contrary to the purpose of these anti-discrimination statutes. However, even if we were inclined to revisit Judge Richard Arnold's opinion in Monahan, as a panel we are bound by this controlling precedent. See M.Y. ex rel. J.Y. v. Special Sch. Dist. No. 1, 544 F.3d 885, 889-90 (8th Cir. 2008); Hoekstra By & Through Hoekstra v. Indep. Sch. Dist. No. 283, 103 F.3d 624, 626 (8th Cir. 1996) (applying the

_____

[6]When the alleged discrimination regards the education of disabled students, other Circuits agree. See C.L. v. Scarsdale Union Free Sch. Dist., 744 F.3d 826, 841 (2d Cir. 2014); G.C. v. Owensboro Pub. Schs., 711 F.3d 623, 635 (6th Cir. 2013); D.A. ex rel. Latasha A. v. Houston Indep. Sch. Dist., 629 F.3d 450, 454-55 (5th Cir. 2010); Sellers by Sellers v. Sch. Bd. of City of Manassas, 141 F.3d 524, 529 (4th Cir. 1998).

bad faith or gross misjudgment standard to district's failure to provide a disabled student access to an elevator).

Applying this standard, the district court concluded that I.Z.M. failed to present evidence of bad faith or gross misjudgment, explaining:

> [T]here is significant evidence demonstrating the steps the School District took to provide I.Z.M. with his instructional materials and assistive devices in accessible formats in a timely manner. . . . Thus, while there may have been instances of statutory noncompliance, "something more" is necessary to state a claim under the ADA and Section 504.

As I.Z.M. does not challenge the district court's analysis under this standard, which we conclude was the correct standard, the court's grant of summary judgment dismissing these non-IDEA claims must be affirmed. See B.M., 732 F.3d at 888.

The judgment of the district court is affirmed.

_____