# United States Court of Appeals
## For the Eighth Circuit
_____

No. 17-1915
_____

Ron Parrish, Parents of L; Lauren Parrish, Parents of L; Victor Craig, Parents of A;
Laura Craig, Parents of A; Casey Laws, Parents of G; Chastidy Laws, Parents of G;
Rachelle Siverly, Parent of S

*Plaintiffs - Appellants*

v.

Bentonville School District

*Defendant - Appellee*

Michael Poore, District Superintendent; Tanya Sharp, District Executive Director
Student Services; Rebecca Powers, Bentonville School Board; Travis Riggs,
Bentonville School Board; Rudy Upshaw, Bentonville School Board; Wendi
Cheatham, Bentonville School Board; Willie Cowgur, Bentonville School Board;
Grant Lightle, Bentonville School Board; Maureen Bradshaw, District SPED Coordinator

*Defendants*

Arkansas Department of Education; Johnny Key, Commissioner

*Defendants - Appellees*
_____

Appeal from United States District Court
for the Western District of Arkansas - Fayetteville
_____

Submitted: February 14, 2018
Filed: July 24, 2018

_____

Before LOKEN, BENTON, and ERICKSON, Circuit Judges.

_____

ERICKSON, Circuit Judge.

Child L, Child A, Child G, and Child S are all children who attended elementary school for varying lengths of time in the Bentonville School District (District). Each child has been diagnosed with autism. The children allege the District denied them a free appropriate public education (FAPE) as required by the Individuals with Disabilities Education Act (IDEA). The claims on appeal fall under the IDEA, 42 U.S.C. § 1983, based on the right to bodily integrity and equal protection, § 504 of the Rehabilitation Act, and Title II of the Americans with Disabilities Act.[1] The parents, on behalf of their children, appeal the district court's[2] seventy-seven page decision granting the District's and the Arkansas Department of Education's motions for summary judgment. We affirm.

## I.    BACKGROUND

A single complaint initiated this action on behalf of four different children with four different sets of facts. The court will briefly identify pertinent background information on each child.

_____

[1]Other claims had been dismissed by the district court in an earlier order, which is not on appeal.

[2] The Honorable P.K. Holmes, Chief Judge, United States District Judge for the Western District of Arkansas.

## 1.    *Child L*

Child L was diagnosed with autism when he was in kindergarten.  He was enrolled in the District from kindergarten until third grade.  Child L received services pursuant to the IDEA.  The District provided services to Child L under an IEP.  During Child L's third grade year, his behavior substantially worsened.  A behavior support plan was created that identified specific methods the District would use to address Child L's misbehavior.  In addition, the District decided to conduct a functional behavior assessment, which outlined Child L's recurring behavioral issues.

Child L exhibited a variety of attention seeking behaviors, which primarily stemmed from disagreements with another student.  In an attempt to respond to these behaviors, the District outlined several curriculum modifications to address Child L's misbehavior, including that Child L would go out for a separate recess to avoid contact with the particular student who appeared to be an instigator in Child L's behavioral outbursts.

In addition, the behavior support plan was reviewed and modified to address Child L's ongoing needs.  Specifically, the plan provided: (1) he was to be placed across the room and facing away from the child that triggered his aggressive behavior (change in space); (2) he would be provided with a visual timer to indicate changes in schedule (change in instructional materials); (3) he would be provided research-based methods such as applied behavior analysis, picture exchange methods, or story-based intervention (change in curriculum); (4) his functional routines in the class would be modified (change in curriculum); (5) he would be given a sensory diet (change in curriculum); (6) he would be allowed quiet time after recess and would have the opportunity to listen to calming music and sleep until he awakened (change in curriculum); and (7) he would have a designated time each day to work with his special education teacher on social skills (change in curriculum).

Despite multiple programming conferences and attempts to manage Child L's recurring misbehavior, from December 2012, until the time the parents withdrew Child L from the District, Child L exhibited behavioral outbursts that ranged from mild disruptions to acts of aggression that resulted in physical harm to several District employees.

2.    *Child A*

Child A's mother observed early in A's life that he was not progressing at the same rate as his twin sister. Before being enrolled in the District, a doctor noted that Child A exhibited "high intellectual abilities" but struggled with self-regulation, peer relationships, and social reciprocity. Child A was enrolled in the District from kindergarten through second grade.

Child A received services pursuant to the IDEA. The District provided Child A with education under an IEP, which contained academic goals, instructional modifications, supplemental aids, and supports to assist Child A in receiving a FAPE. As part of the IEP, the District provided Child A with a paraprofessional staff member for all of Child A's general education activities. The IEP noted that Child A exhibited "physically aggressive behaviors towards staff and other students." The District prepared a behavior support plan to address these behaviors.

Between January and March 7, 2013, Child A behaved aggressively on nine separate occasions. The behavior included hitting; spitting; throwing objects, furniture, school supplies, and books; yelling; biting; pushing walls and objects; scratching; pulling and ripping out hair; head-butting; pulling clothing; attempting to insert spit into an electrical outlet; disrobing; attempting to choke himself by putting a finger down his throat; running around the room; banging on doors and glass; pushing over cabinets; throwing furniture; tearing the back end off cabinets; dumping out containers; ripping handles off closed shelves; kicking computer monitors, chairs,

and desks; and urinating on the carpet. The hearing officer concluded that the District first addressed this misbehavior through use of the interventions contained in the IEP, but when these methods proved ineffective the District applied CPI holds[3] and would transport Child A to a separate environment.

At a programming conference in March 2013, the District decided a functional behavioral analysis needed to be completed and the behavioral support plan revised. Between March 8, 2013, and May 30, 2013, Child A behaved aggressively on at least eight separate occasions, including swinging his arm at a teacher, pushing over bookshelves, and attempting to harm another student. The District continued to resort to the intervention techniques contained in the IEP and behavior support plan, but eventually Child A would need to be restrained and transported to a different environment for the safety of himself and others.

For second grade, Child A's parents consented to placement in a different elementary school within the District that operated on a traditional school year calendar, whereas the previous school operated on a year-round calendar with long periodic breaks. In the spring semester of second grade, Child A started arriving late to school and was being checked out of school early. Child A's parents then withdrew A from the District.

### 3. Child S

Child S attended elementary school in the District during his second grade year. The District educated Child S in accordance with an IEP that was developed under the procedures outlined in the IDEA. During Child S's enrollment in the District, the

---

[3] A CPI hold was described by the hearing officer as "a hold where staff, standing behind A, holds his wrists so that A's arms are wrapped around him."

District also relied upon behavior plan documents, input from a psychologist, and a crisis plan to manage Child S's education and behavior.

IEP documentation from April 25, 2013, indicated that Child S refused to do work and follow directions. Child S's refusal to work escalated to physical aggression at least once per day, and Child S would spend an average of one hour per half-day in the recovery setting for de-escalation.

From the period of August 21, 2012, to September 28, 2012, a behavior support plan documented that Child S exhibited 28 episodes of physical aggression, 16 episodes of verbal aggression, 27 episodes of refusing to work, and 21 episodes of attempting to leave. This amounted to a total of 92 episodes regarding behavioral issues during an approximate one month period. The behavioral issues ranged from throwing chairs and running around to kicking, punching, scratching, and head-butting staff members.

The crisis plan authorized the District to use physical restraint as a last resort when Child S presented a danger to himself or others. The District used various methods of restraint for Child S.

When Child S's mother learned that the District was requesting that Child S be placed in therapeutic day treatment, the mother withdrew Child S from school and moved Child S to live with Child S's aunt in California.

4.    *Child G*

Child G attended elementary school in the District during his second grade year. His diagnoses include Pervasive Developmental Disorder, Attention Deficit Hyperactivity Disorder, and Not Otherwise Specified. The District's evaluations showed Child G to exhibit average cognitive functioning, normal pragmatic skills, and

average achievement composite scores on education achievement testing. Child G's qualifying educational diagnosis for services was autism.

Child G's parents placed Child G in a private school and relocated away from the District when they believed Child G started exhibiting fear, anxieties, and school avoidance behaviors.

## II.  DISCUSSION

On appeal, the parents re-raise their claims and argue that the district court erred as a matter of law in finding the District provided a FAPE in the least restrictive environment, erred in dismissing Child S and Child G's claims for failure to exhaust, and abused its discretion in excluding Dr. Howard Knoff's expert report. We find no error or abuse of discretion.

### A.  IDEA Claims

The parents of Child L and Child A seek review of final administrative orders that followed due process hearings conducted by the Arkansas Department of Education. The parents of Child S and Child G withdrew from the District and never exhausted the administrative procedures set forth in 20 U.S.C. § 1415. Because of the procedural differences, the claims of Child L and Child A are considered collectively and the claims of Child S and Child G are considered collectively.

*Review of Child L and Child A's Claims*

In an IDEA case where there are no procedural issues, the statute authorizes judicial review of the state hearing officer's "determination of whether the child received a [FAPE]." 20 U.S.C. § 1415(f)(3)(E)(i). "Because judges are not trained educators, judicial review under the IDEA is limited." Pachl v. Seagren, 453 F.3d

1064, 1068 (8th Cir. 2006) (quoting E.S. v. Indep. Sch. Dist., No. 196, 135 F.3d 566, 569 (8th Cir. 1998)).

A FAPE "consists of educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child 'to benefit' from the instruction." Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty v. Rowley, 458 U.S. 176, 188–89 (1982). Whether a school district provided a child with a FAPE is reviewed de novo. I.Z.M. v. Rosemount-Apple Valley-Eagan Pub. Sch., 863 F.3d 966, 970 (8th Cir. 2017). "The reviewing court 'must give due weight to the outcome of the administrative proceedings.'" Id. (quoting T.F. v. Special Sch. Dist. of St. Louis Cty., 449 F.3d 816, 818 (8th Cir. 2006). "On appeal, district court factual findings 'are binding unless clearly erroneous.'" Id. (quoting Gill v. Columbia 93 Sch. Dist., 217 F.3d 1027, 1035 (8th Cir. 2000)).

In this case, the district court meticulously reviewed the entire record before the hearing officer, provided a thorough summary of the evidence, developed the record where the hearing officer's decision was deficient, and relied on the hearing officer's credibility determinations when there was conflicting testimony. The district court granted the District's motions, concluding the record showed no violation of the IDEA. More specifically, the court found that: (1) the District took reasonable steps to train its teachers; (2) the District did not use physical force and seclusion in a way that denied Child L or Child A a FAPE; (3) the District held programming conferences and informal meetings to propose, implement, modify, and communicate interventions regarding misbehavior and academic progress as well as goals and objectives; (4) the District's implementation and collection of data arising from behavior intervention plans complied with the IDEA; (5) the strategies used by the District, even if not perfect, complied with the IDEA; (6) the parents did not raise a genuine issue for trial on whether the District failed to educate their children in the least restrictive environment; and (7) after fully developing the record on whether the

parents of Child L were given a meaningful opportunity to participate in the modification of Child L's IEP and behavior plans, there was no actionable IDEA violation raised by either Child L or Child A.

With regard to the § 1983 claims for violation of bodily integrity and equal protection, the district court found there was no cited instance of restraint used by the District that could be deemed unreasonable and no identification of a similarly situated student who was treated differently. As to the § 504 Rehabilitation Act and ADA claims, the court found that the parents of Child L and Child A failed to show the District acted in bad faith or with gross misjudgment.

Here, the district court, like the hearing officer before, concluded that the District had provided Child L and Child A with a FAPE. After carefully reviewing the claims, the entire record, the arguments of the parties, the decisions of the hearing officer, and the decision of the district court, we conclude that the record supports the district court's findings and conclusions that the parents have failed to demonstrate an actionable IDEA claim, a claim under § 1983, a claim under § 504 of the Rehabilitation Act, or a claim under the ADA. The District's IEPs and behavior intervention plans included detailed strategies to address the children's behavioral problems and contained evidence that the children were progressing academically. The District's strategies, while they might have been imperfect, complied with the IDEA. See M.M. v. Dist. 0001 Lancaster Cty. Sch., 702 F.3d 479, 487 (8th Cir. 2012) (quoting CJN v. Minneapolis Pub. Sch., 323 F.3d 630, 639 (8th Cir. 2003)) ("It is 'largely irrelevant' if the school district could have employed 'more positive behavior interventions' as long as it made a 'good faith effort' to help the student achieve the educational goals outlined in his IEP.").

The claims under the ADA and the Rehabilitation Act are similarly unsupported. The parents failed to present evidence of bad faith or gross misjudgment sufficient to proceed with their alleged ADA and § 504 violations. See I.Z.M., 863

F.3d at 973 (repeating that "where alleged ADA and § 504 violations are based on educational services for disabled children, the plaintiff must prove that school officials acted in bad faith or with gross misjudgment.") (quotation and citation omitted). Additionally, the record is devoid of evidence that the District used physical force or seclusion in a manner that denied the children a FAPE. Also, the parents failed to present any evidence that the District treated Child L and Child A differently than other similarly situated children. Under the circumstances presented here, the district court properly granted summary judgment on Child L and Child A's claims.

*Review of Child S and Child G's Claims*

"This court reviews de novo whether exhaustion of administrative remedies was required." J.M. v. Francis Howell Sch. Dist., 850 F.3d 944, 947 (8th Cir. 2017) (citations omitted). The gravamen of both Child S and Child G's claims seek to redress the denial of a FAPE. Child S's mother did not file an IDEA due process complaint, request a due process hearing, or engage in the exhaustion procedures under the IDEA. Rather, she moved her child out-of-state and then commenced this action. Similarly, Child G's parents did not file an IDEA due process complaint, request a due process hearing, or engage in the exhaustion procedures under the IDEA. They relocated with Child G to another state and then commenced this action.

Because they seek relief available under the IDEA in the form of denial of a FAPE, Child S and Child G's claims are subject to exhaustion, barring an applicable exception. J.M., 850 F.3d at 950. The three exceptions are "(1) futility, (2) inability of the administrative remedies to provide adequate relief, and (3) the establishment of an agency policy or practice of general applicability that is contrary to law." Id. (quotation and citation omitted). None of the exceptions apply in this case.

The parents assert that they meet the futility exception because they moved out of state. Their assertion is unsupported by any precedential authority. The district

court properly granted summary judgment on Child S and Child G's claims for failure to exhaust their administrative remedies.

### B.      Exclusion of Expert Report

This court reviews a district court's exclusion of expert testimony for an abuse of discretion, and its findings of fact for clear error.  Taylor v. Cottrell, Inc., 795 F.3d 813, 816 (8th Cir. 2015).

The Appellants argue that the district court abused its discretion when it excluded Dr. Howard Knoff's expert report on the grounds that the report was not timely disclosed and the untimely disclosure was not harmless or substantially justified.  The court's scheduling order stated that discovery must be completed by March 8, 2016, which was then extended until August 2, 2016.  Dr. Knoff was disclosed as a potential expert witness on February 8, 2016.  No report was disclosed prior to the initial close of discovery.  One day before the extended discovery deadline of August 2, 2016, Dr. Knoff's report was disclosed.

A district court's exclusion of evidence is reviewed "for a clear and prejudicial abuse of discretion."  Wegener v. Johnson, 527 F.3d 687, 690 (8th Cir. 2008).  "We will reverse only if the district court's ruling was based on 'an erroneous view of the law or a clearly erroneous assessment of the evidence' and affirmance would result in 'fundamental unfairness.'"  Id. (quoting Davis v. U.S. Bancorp, 383 F.3d 761, 765 (8th Cir. 2004)).  We find the district court's election of exclusion as a remedy was within the bounds of its discretion in this case.  The failure to disclose the report in a timely manner was neither substantially justified nor harmless.  If the court had not excluded the report, it would have been necessary to grant a continuance and further disrupt the court's trial calendar.

The Appellants argue that the district court abused its discretion because exclusion was tantamount to dismissal of Child L and Child A's § 1983 claim and disability discrimination claims. This argument is especially unavailing in this case because an examination of the expert report reveals it lacked sufficient substance to materially impact the district court's analysis. The report contained pages of general information about the statutes giving rise to the claims and then formed conclusory opinions with virtually no specifics or detail about the District's alleged failures. A district court does not abuse its discretion in excluding a conclusory, non-specific report. Under these circumstances, we affirm the district court's exclusion of Dr. Knoff's expert report.

## III. CONCLUSION

Upon review of the record and the deference afforded in these types of cases, we agree with the district court that Child L and Child A failed to establish a cognizable claim under the IDEA, § 1983, § 504 of the Rehabilitation Act, or the ADA. The district court properly dismissed Child S and Child's G's claims for failure to exhaust administrative remedies. The district court did not abuse its discretion in excluding Dr. Knoff's expert report.

The judgment of the district court is affirmed.

_____