GORSUCH, Circuit Judge.
The Individuals with Disabilities Education Act requires public school' districts that accept federal funding to furnish a “free appropriate public education” to their disabled students. 20 U.S.C. § 1412(a)(1). Sometimes, of course, disputes arise over whether the school district is doing the job it’s agreed to do. This is one of those cases. Christine B., the mother of a student known in these proceedings as A.F., contends that the school district failed to address appropriately her daughter’s disabilities in the educational program it formulated for her.
When a dispute like this emerges, the parent and student must file an administrative complaint with local school officials. See id. § 1415(b)(6), (f)(1)(A). Then the parties are instructed by statute to hold a “[pjreliminary meeting” with an eye toward talking through the grievance and trying for an early resolution. Id. § 1415(f)(l)(B)(i). They can also choose to resolve their differences through mediation. Id. § 1415(e). But if no settlement satisfactory to both sides comes to pass, the parties must proceed to a sort of trial, what IDEA calls an “[ijmpartial due process hearing.” Id. § 1415(f). If the hearing still doesn’t satisfy parent and student, an administrative appeal may follow. Id. § 1415(g)(1). If the parent and student still remain “aggrieved by the findings and decision made” after this appeal process, they may then (and only then) “bring a civib action” in federal court. Id. § 1415(i)(2)(A). At the same time, if the state fails to provide an appeals process, a party who is aggrieved by the findings and decision in the subsection (f) trial-like proceeding may also proceed to court. Id. Plainly in all this, Congress sought to ensure access to courts for IDEA claims but only failing the success of the many alternative dispute opportunities it provided.
This case ended almost before it began. Christine B. filed her administrative complaint, just as she had to. But before any hearing could be held, she sought to mediate her dispute. And the choice proved fruitful, for in the end the parties signed a settlement agreement. Indeed, as a result of the settlement, Christine B. asked the administrative • agency to dismiss her IDEA claims with prejudice, something the agency duly did.
But after ending her suit she sought to begin it again. Despite the satisfactory result she received through mediation, Christine B. later took to mind the thought she might sue — and she did. To be sure, her lawsuit didn’t seek to press a claim under IDEA, itself a tacit acknowledgment that her mediated settlement precluded that option. Instead, she sued under the Americans with Disabilities Act, the Rehabilitation Act, and 42 U.S.C. § 1988, though the allegations in her federal court complaint and those in her original IDEA administrative complaint are nearly identical: both allege that A.F. suffers from the same disabilities and both contend that the school district failed to take her disabilities into account in her educational program. *1247 Agreeing with the school district that Christine B. failed to exhaust available administrative remedies, the district court dismissed her lawsuit and it is this result she now asks us to overturn.
There’s no doubt that it’s often possible to pursue claims under IDEA and other federal statutes seriatim just as Christine B. wishes to do. Indeed, Congress expressly guaranteed as much, stating that IDEA’S promises and procedures don’t necessarily extinguish one’s “rights ... and remedies” under other federal laws like the ADA and Rehabilitation Act. 20 U.S.C. § 1415(Z). In fact, Congress added this language to clarify its disagreement with the Supreme Court’s suggestion in Smith v. Robinson, 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984)’ that a claim under IDEA (or, really, its predecessor statute, the Education of the Handicapped Act) should be the exclusive federal statutory remedy for any education-related complaint by disabled public school students.
But Congress didn’t stop there. After emphasizing that IDEA doesn’t always preclude relief under laws like the ADA and Rehabilitation Act, Congress added this caveat:
except that before the filing of a civil action under such laws seeking relief that is also available under [IDEA], the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under [IDEA].
20 U.S.C. § 1415(2). So it is that, to bring a lawsuit under federal law that “seek[s] relief that is also available under” IDEA, you first must exhaust the procedures set forth in subsections (f) and (g) “to the same extent as would be required had the action been brought under” IDEA. And, as we’ve seen, to “bring a civil action” under IDEA you must be “aggrieved by the findings and decision made” after the administrative appeals process (or trial process if no appeal process is provided). Id. § 1415(i)(2)(A).
It’s here where Christine B. faces a problem, just as the district court recognized. She accepts that her current lawsuit “seek[s] relief that is also available under” IDEA and thus triggers subsection (l )’s exhaustion requirement. To be sure, her lawsuit seeks damages — a remedy that’s “ordinarily unavailable in administrative [IDEA] hearings.” Cudjoe v. Indep. Sch. Dist. No. 12, 297 F.3d 1058, 1066 (10th Cir.2002). But some time ago this court held that the “dispositive question” when assessing the applicability of subsection (l )’s exhaustion requirement isn’t whether the plaintiff seeks damages or some other particular remedy, but “whether the plaintiff has alleged injuries that could be redressed to any degree by the IDEA’S administrative procedures and remedies.” Padilla ex rel. Padilla v. Sch. Dist. No. 1, 233 F.3d 1268, 1274 (10th Cir.2000) (emphasis added). Neither does Christine B. ask us to revisit Padilla or otherwise dispute that the injuries she seeks to redress in her lawsuit are indeed capable of being redressed to some degree by IDEA’S administrative procedures. And with that, with an admission of subsection (l )’s applicability, it’s very hard to see how she can satisfy it. Subsection (Z) required her to exhaust the procedures set forth in subsections (f) and (g) to the same extent necessary to bring a civil action under IDEA itself. And to bring such an action she must be able to show that she’s “aggrieved by the findings and decision” of the administrative trial authorities described in subsection (f) or the administrative appellate authorities described in subsection (g). Something she manifestly is not.
Coming at the point from a different angle, Christine B.’s problem is that *1248 there’s only one exhaustion rule for IDEA p.la.ims and other federal claims seeking relief also available under IDEA. It’s clear Christine B. cannot bring an IDEA lawsuit in federal court after choosing to settle her IDEA claims and agreeing to their dismissal with prejudice. She even tacitly concedes this by declining any attempt to raise them here. And from this it follows ineluctably that an ADA or Rehabilitation Act or § 1983 lawsuit seeking the same relief is also barred.
Christine B. responds this way. She notes that subsection (f) permits the parties to opt out of the trial-like administrative process and pursue mediation under subsection (e). See id. § 1415(f)(l)(B)(i). So by mediating her IDEA claim under subsection (e), she says, she necessarily satisfied the procedures described in subsection (f). And given that no appeal is necessary or even available after a mediated settlement, subsection (g) is beside the point. It’s in this way, she argues, that she exhausted the administrative procedures available to her. Our dissenting colleague seems to adopt this same line of reasoning too.
The problem is this vision of exhaustion just isn’t the one embodied in the plain text of the statute. If subsection (i) said that to bring a federal lawsuit under the ADA or Rehabilitation Act or Section 1983 you merely had to “satisfy the administrative procedures under subsection (f),” we might be able to say that, because subsection (f) references subsection (e) and its provision of mediation as an alternative means of dispute resolution, Christine B. is free and clear to pursue her lawsuit. But that’s not what subsection (i) says. It says that to bring a civil action under federal law seeking the same relief IDEA supplies, you must exhaust the procedures in subsections (f) and (g) “to the same extent” as you must to bring a civil action under IDEA itself. And to earn the right to bring a civil action under IDEA, it’s just an implacable fact that you must qualify under subsection (i) as a party “aggrieved by the findings and decision” of administrative trial or appellate authorities. And neither Christine B. nor the dissent even attempts to suggest she qualifies as that.
Without statutory text to help her, Christine B. urges us to examine precedent. And it’s true enough that otherwise unlikely statutory interpretations sometimes look more attractive when backed by the force of precedent we’re obliged to obey. But that’s just not the case here either. Christine B. directs us first to Ellenberg ex rel. S.E. v. New Mexico Military Institute, 478 F.3d 1262 (10th Cir.2007). But Ellenberg held that subsection (Z)’s exhaustion requirement didn’t apply to the plaintiffs federal claims there precisely because IDEA could “offer[ ] no relief’ for the particular wrongs the plaintiff asserted. Id. at 1280-81. Here again and by contrast, Christine B. accepts that subsection (1)’s exhaustion requirements apply to all of her federal claims and argues only that she’s satisfied those requirements — an argument that, as we’ve seen, the statutory text just can’t bear. Had she contested the applicability of subsection (l) to her case, or perhaps asked us to revisit Padilla’s expansive view of subsection (l )’s reach, we might have had a different case. Indeed, there are notes in the dissent that could be read to suggest arguments along just those lines. But Christine B. has made no such argument for herself either in the district court or this one.
Neither does Christine B.’s citation tq Muskrat ex rel. J.M. v. Deer Creek Public Schools, 715 F.3d 775 (10th Cir.2013), prove more helpful to her cause. There the parents filed suit under various statutes seeking damages for “continuing medical consequences” arising from the school *1249 district’s alleged abuse of a “timeout” room. Id. at 785. This court proceeded on the premise that IDEA could supply some remedial help to address the parents’ concerns and so, under Padilla, subsection (I)’s exhaustion requirement did apply. But the court then observed that the parents, through an agreement with the school, had obtained all the relief IDEA could possibly provide. See id. at 785-86. Given this, the court held, requiring them to walk through the remaining IDEA administrative processes — when no more relief could possibly be won under the statute — would be “futile.” Id. at 786. In doing so, the court accepted that IDEA’S administrative exhaustion requirement is subject to a traditional futility exception. See Honig v. Doe, 484 U.S. 305, 327, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988) (noting in the context of the Education of the Handicapped Act, IDEA’S predecessor, that “parents may bypass the administrative process where exhaustion would be futile or inadequate”).
Quite unlike the parents in Muskrat, however, Christine B. never attempted a futility argument in this case before the district court issued its final judgment. Instead (and again) she contended only that she had actually and successfully exhausted every administrative avenue IDEA specifies for cases like hers. To be sure, after the district court entered final judgment Christine B. sought to reopen her case so she could introduce a futility argument. But the district court could find no justifiable reason for her failure to present the argument before final judgment and denied the motion to reopen on that basis (among others). See generally Fed.R.Civ.P. 60(b) (requiring parties to show excusable neglect or the like). Maybe the result in this case might have been different if the argument had been presented earlier. Certainly our dissenting colleague seems to take the view that requiring further administrative litigation in these circumstances would be a waste of time and effort. See Dissent at 1257. But neither Christine B. nor the dissent offers any ground on which we might reverse the district court, for even now they do not offer a colorable reason why she failed to present a futility argument before judgment or attempt to suggest how the district court’s original judgment committed plain error by failing to address such an argument.
Beyond text and precedent, Christine B. appeals to policy, asserting that by following the statute’s plain terms we risk “thwart[ing]” the very idea of IDEA, at least as she conceives of it. In her view it’s simply unimaginable that Congress might have wanted to compel a claimant to choose between accepting an early mediated resolution or foregoing that relief in hope of obtaining fuller relief through federal- court litigation months or years later. Our dissenting colleague voices much the same argument. The problem is that where, as here, “the terms of the statute are clear and unambiguous, the inquiry ends and we simply give effect to the plain language of the statute.” United States v. Sprenger, 625 F.3d 1305, 1307 (10th Cir.2010) (internal quotation mark omitted). Indeed, it is and ought to be a very rare and highly unusual thing for courts to dismiss the results dictated by Congress’s plain statutory command on the ground they are implausible as a matter of “policy.” Yes, there’s scrivener’s error doctrine. See, e.g., U.S. Nat. Bank of Or. v. Indep. Ins. Agents of Am., Inc., 508 U.S. 439, 462, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993). But we hardly have anything like that here and neither Christine B. nor the dissent identifies any recognized doctrine that might allow us to disregard the plain terms of IDEA’S exhaustion requirement.
*1250 Even beyond this fundamental problem lies another for there is nothing remotely implausible about the “policy” result the plain language dictates. After Smith, Congress in subsection (l) surely indicated' that it does not regard IDEA as the sole federal statutory tool available to remedy education-related wrongs. But, as we’ve seen, in responding to Smith Congress also expressly chose to link IDEA claims to other federal claims through 20 U.S.C. § 1415(Z)’s exhaustion requirement. Christine B. and the dissent may wish this linkage didn’t exist and we can imagine a rational Congress choosing to sever it. But neither do we find it hard to imagine a rational Congress choosing to do just what the Supreme Court in Smith thought Congress had done, funneling all education-related federal lawsuits into IDEA exclusively. And we can easily imagine a rational Congress doing exactly what it did after Smith, taking one of many possible intermediate positions by requiring those who wish to forego a mediated IDEA settlement to exhaust (or prove futile) all of the administrative grievance processes available to them before bringing any related federal lawsuit. While we readily admit many different plausible, indeed respectable, policy choices could be made in this field, no one has given us any reason to think the policy decision embodied in the text adopted by Congress is anything less than those things as well. And it’s simply not our place to displace Congress’s plain and plainly rational directions with our own.
Indeed, like most legislation, we don’t doubt that IDEA sought to balance a number of competing purposes in a whole array of areas (like seeking to help children and respect local educational authorities) and it’s hardly beyond the pale to think it did just that here (by allowing for litigation in extreme cases and encouraging settlement or administrative resolution in most). To permit a litigant to invoke the supposedly “ ‘plain purpose[s]’ of legislation at the expense of the terms of the statute itself’ risks doing no more “in the end [than] preventing] the effectuation of congressional intent” by replacing Congress’s compromise with another of our own devise. Bd. of Governors of the Fed. Reserve Sys. v. Dimension Fin. Corp., 474 U.S. 361, 373-74, 106 S.Ct. 681, 88 L.Ed.2d 691 (1986); see also In re Dawes, 652 F.3d 1236, 1243 (10th Cir.2011) (“[Departing from a precise statutory text may do no more than disturb a carefully wrought legislative compromise.” (internal quotation mark omitted)).
Failing all else, Christine B. suggests we should at least remand this case for further factual development (read: discovery) on the exhaustion question. She says the district court acted too quickly in dismissing the case in response to the defendants’ motion for judgment on the pleadings and committed error when it’ declined to reopen the case in response to her post-judgment motions seeking time for further factual development. But like the district court, we see no profit in this course because it’s clear as a matter of law that she cannot prove exhaustion given the pleadings she filed in the proceedings below and the arguments she presented when challenged and given a full and fair chance to respond. And it’s settled law in this circuit, as elsewhere, that the question whether a party exhausted administrative remedies may be decided on a motion for judgment on the pleadings and incorporated materials where the failure to exhaust is clear as a matter of law. See Allen v. Zavaras, 568 F.3d 1197, 1202 (10th Cir.2009).
In the end, this is one of those cases where bad argument risks bad law. It’s possible Christine B. could have won this case without depending on an argument that calls on this court to mangle plain *1251 statutory temas. Maybe Christine B. could have argued that subsection (l) was inapplicable to her claims. Maybe she could have argued the futility of further exhaustion. But any potential argument along lines like those was abandoned long ago. And what argument that’s left runs headlong into an unambiguous textual command, a command that yields an entirely plausible policy result, a result that may not be Christine B.’s first choice or the dissent’s but that no one can (or has even tried to) call absurd or somehow otherwise unworthy of our respect. And it cannot be the case that the failure of one party in one case to press potentially winning arguments should induce this or any court to rewrite Congress’s clear statutory directions for all cases to come.
Affirmed.