# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 17-3298

———————————————

Jacquie Albright, As Parent and Next Best Friend of Child Doe

*Plaintiff - Appellant*

v.

Mountain Home School District; Debbie Atkinson, Director of Special Education;
Susanne Belk, BCBA Consultant

*Defendants - Appellees*

——————————

Appeal from United States District Court
for the Western District of Arkansas - Harrison

——————————

Submitted: December 13, 2018
Filed: June 12, 2019

——————————

Before SMITH, Chief Judge, WOLLMAN and GRASZ, Circuit Judges.

——————————

WOLLMAN, Circuit Judge.

Jacquie Albright alleges that her daughter Child Doe, a young student with autism and significant intellectual deficits, was not provided a free appropriate public education (FAPE) by Mountain Home School District (the District), as required by the Individuals with Disabilities Education Act (IDEA or Act), 20 U.S.C. § 1400 *et seq.* When her administrative challenge was rejected, Albright appealed that decision

in federal district court and brought additional claims for constitutional violations under 42 U.S.C. § 1983, disability discrimination and retaliation under § 504 of the Rehabilitation Act, disability discrimination under Title II of the Americans with Disabilities Act (ADA), and violations of Arkansas law. The district court[1] affirmed the administrative decision, granted summary judgment to the District on the remaining federal claims, and then declined to exercise supplemental jurisdiction over Albright's state law claims. We affirm.

Child Doe has been educated within the District from kindergarten to the present in accordance with an Individualized Education Plan (IEP) formulated pursuant to the IDEA. The IEP sets forth the educational accommodations approved for Child Doe, as well as a behavior intervention plan (BIP) to address any problematic behaviors. An IEP team periodically discusses and revises Child Doe's IEP as needed. Albright and appellee Susanne Belk, a Board Certified Behavior Analyst employed as a consultant by the District during the relevant period, are members of Child Doe's IEP team. The highly contentious relationship between Albright and the District, complicated further by Albright's employment with the District, has made it difficult for Albright and the remainder of the IEP team to agree on many aspects of Child Doe's IEP.

Albright has filed four due process complaints against the District challenging Child Doe's education. The first two complaints were resolved by settlement agreements in August 2012 and March 2014. On October 20, 2014, early in Child Doe's fourth-grade year, Albright filed the due process complaint at issue, alleging that the District had denied Child Doe a FAPE between November 15, 2013, and October 17, 2014. Events after October 17, 2014, are the subject of a separate due process complaint.

---

[1]The Honorable Timothy L. Brooks, United States District Judge for the Western District of Arkansas.

After Albright filed the third due process complaint, the parties proceeded to an eleven-day hearing held between March and September of 2015. A hearing officer employed by the Arkansas Department of Education presided and heard testimony from witnesses, including Albright, Belk, and an expert hired by Albright. The hearing officer thereafter issued a forty-page decision setting forth findings of fact and conclusions of law. Relevant here, the hearing officer addressed whether Albright was denied the opportunity to participate in developing the IEP, whether Child Doe benefitted academically from the IEP, and whether the BIP adequately addressed Child Doe's behaviors or exacerbated them by permitting the use of sensory integration techniques.

The hearing officer found that Albright had not been denied the opportunity to participate in the IEP process, citing the following facts: During the period in question, Albright attended all IEP conferences until September 2014, when she chose not to attend a meeting, and there was no evidence to substantiate Albright's claims that other IEP conferences were held in her absence. Although the District did not agree to or satisfy all of Albright's requests regarding Child Doe's education, there was no evidence indicating that the District had hampered Albright's active participation in developing Child Doe's IEP. Hundreds of pages of emails and transcripts of IEP meetings demonstrate that Albright actively participated in the IEP process.

The hearing officer also found that the IEP itself was working. More specifically, he found that in light of Child Doe's significant disabilities, the evidence showed that the IEP did provide her with educational benefits. The hearing officer also found, however, that Albright believed that Child Doe was capable of greater academic achievements than indicated by the assessments. Nevertheless, he credited Belk's testimony that Child Doe had shown academic improvement during the relevant period.

To complicate matters, Child Doe's disability was originally identified as intellectual deficits, but was changed to autism during the period in question. Despite the changed diagnosis, the hearing officer found that the BIP in place at the time addressed the same maladaptive behaviors identified by the psychologist who had diagnosed Child Doe with autism. Albright's expert testified that the BIP was inadequate, but the hearing officer found that his testimony was refuted by the District's behavior data and Belk's testimony regarding her understanding of Child Doe's behaviors.

In sum, the hearing officer determined that after "reviewing the elicited testimony and the evidence in this case it is clear that the District attempted to focus on what they believed to be the unique needs of [Child Doe] even prior to changing the primary handicapping condition from intellectual deficits to autism." The hearing officer concluded that the District "recognized and accepted the additional challenge of addressing the maladaptive behaviors [Child Doe] exhibited as a consequence, more likely than not of her autism, as well as her intellectual deficits and the challenges that she presented to the educators," and it thus did not deny Child Doe a FAPE.

Albright appealed the hearing officer's decision in federal district court (Count I) and brought several related claims under federal and state law (Counts II-VI), which were subsequently bifurcated. In her IDEA appeal, Albright specifically contested three of the hearing officer's conclusions: that she had participated meaningfully in the IEP process, that it had been unnecessary to develop a new BIP for Child Doe, and that the District had used evidence-based practices in Child Doe's IEP. The district court decided the appeal on the briefs, affirming the hearing officer's decision on each issue, and "wholeheartedly agree[ing]" with the hearing officer's determination that Albright had participated meaningfully in the IEP process. D. Ct. Order of July 5, 2017, at 6 [hereinafter July 5 Order]. The court also found that "the BIP that was already in place was working well." Id. Finally, the

-4-

court determined that it "ha[d] not found any evidence in the record that sensory integration treatment is not based on peer-reviewed research, nor . . . that the District's use of sensory integration treatment somehow prevented the District from utilizing services that are based on peer-reviewed research." Id. at 8.

Albright moved to alter or amend the judgment, asserting that the district court had made manifest errors of law or fact. The court denied Albright's motion, concluding that any errors it had made did not affect its disposition and that Albright's motion raised new arguments that she had not raised in her initial appeal brief.

At the close of discovery, the District moved for summary judgment on Counts II through VI. Under local rules, Albright's response was due fourteen days after the District's motion was filed on April 28. Albright moved for leave to file an amended complaint on May 4.[2] The next day, she requested an extension of time to file her summary judgment response, contending that the motion for summary judgment would be moot if the court allowed her to file an amended complaint. The court denied her motion for an extension on May 7. On May 10, Albright requested another extension, asserting that her counsel had obligations in other cases and that her counsel would need to attend to family medical issues over the following weeks. The court denied the motion that same day. On May 22, ten days after the deadline had passed, Albright began filing her summary judgment response, accompanied by a motion to accept her response out of time.

In its summary judgment order, the district court denied Albright's out-of-time filing request, struck her filings from the record, and granted the District's motion for summary judgment. In her motion to alter or amend the judgment, Albright contended that the court had applied the incorrect standard when evaluating her out-

---

[2]The district court denied this motion as moot in its July 5 order.

of-time motion. Although the court agreed that it had applied the wrong standard, it concluded that the motion failed under the correct standard. Albright thereafter filed this appeal.

Albright first appeals the district court's order affirming the hearing officer's determination that Child Doe was provided a FAPE. We review *de novo* whether the District provided Child Doe with a FAPE. See I.Z.M. v. Rosemount-Apple Valley-Eagan Pub. Sch., 863 F.3d 966, 970 (8th Cir. 2017). In so doing, we must afford due weight to the outcome of the administrative proceedings, see id., and accept the district court's factual findings unless they are clearly erroneous, see Gill v. Columbia 93 Sch. Dist., 217 F.3d 1027, 1035 (8th Cir. 2000). "Our duty is to interpret and apply the law, not to substitute our own notions of sound educational policy for those of the school authorities which we review." Special Sch. Dist. No. 1, Minneapolis Pub. Sch. v. R.M.M. ex rel. O.M., 861 F.3d 769, 771-72 (8th Cir. 2017) (cleaned up).

The IEP is "the centerpiece of the [IDEA]'s education delivery system for disabled children." Honig v. Doe, 484 U.S. 305, 311 (1988). Albright asserts that the District denied Child Doe a FAPE by implementing an IEP that was inadequate, in no small part because Albright herself was denied the opportunity to meaningfully participate in the formation process. The district court and hearing officer thought otherwise. Our independent review of the record leads us to conclude that Albright has failed to show that Child Doe's IEP was inadequate.

"To meet its substantive obligation under the IDEA, a school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE–1, 137 S. Ct. 988, 999 (2017). "The Act contemplates that this fact-intensive exercise will be informed not only by the expertise of school officials, but also by the input of the child's parents or guardians." Id. "Any review of an IEP must appreciate that the

question is whether the IEP is *reasonable*, not whether the court regards it as ideal." Id.

At the due process hearing, and again before the district court, Albright argued that the IEP's behavior intervention plan was not working. She asserted that the BIP included the use of pseudoscientific practices prohibited under the IDEA, such as "sensory integration techniques," and that the BIP required revision in light of Child Doe's apparently escalating patterns of behavior. Quoting Belk's testimony, the district court found that "the BIP that was already in place was working well." July 5 Order, at 6. Albright argues that this finding was clearly erroneous in light of her expert witness's testimony that the plan in place would not improve Child Doe's behaviors. As proof of Child Doe's worsening behaviors, Albright notes that between January 2013 and October 2014 the BIP was updated to include a revised and slightly longer list of "problem behaviors."

The hearing officer found Belk's testimony credible, giving her testimony greater weight than that of Albright's expert. See Bradley ex rel. Bradley v. Ark. Dept. of Educ., 443 F.3d 965, 974 (8th Cir. 2006) ("We recognize that the hearing officers 'had an opportunity to observe the demeanor of the witnesses,' and we are mindful that it is not the place of the courts to 'substitute [our] own notions of sound educational policy for those of the school authorities that [we] review." (alterations in original) (quoting Strawn v. Mo. State Bd. of Educ., 210 F.3d 954, 958 (8th Cir. 2000))). The hearing officer and district court both credited Belk's testimony that she believed the IEP was working. The lists of problem behaviors alone do not contradict Belk's testimony, because they do not include important information, such as the behaviors' frequency, that would be relevant in determining whether Child Doe's behavior was worsening. Nor do the lists themselves purport to be exhaustive chronicles of Child Doe's behaviors. In light of Belk's testimony, which was based on her extensive experience working with Child Doe, we conclude that the district

-7-

court did not clearly err in finding that the BIP was "working well" or that it was adequate.

Albright also argues that sensory integration techniques are pseudoscientific treatments that violate the IDEA's requirement that services be "based on peer-reviewed research to the extent practicable." 20 U.S.C. § 1414(d)(1)(A)(i)(IV). The district court found no evidence "that sensory integration treatment is not based on peer-reviewed research, nor [did] it f[ind] any evidence in the record that the District's use of sensory integration treatment somehow prevented the District from utilizing services that are based on peer-reviewed research." July 5 Order, at 8. Albright contends that this finding was clearly erroneous, again citing the testimony of her expert witness and asserting that "the opportunity cost of the District's decision to use a pseudoscientific practice is that it foregoes use of other, peer-reviewed treatments." Appellant's Br. 19. Albright does not object to the district court's finding that "it is abundantly clear from the record that the District made extensive use of evidence-based practices to educate Child Doe." July 5 Order, at 7. Even putting aside the question whether sensory integration techniques are based on peer-reviewed research, the district court's other findings, which are not clearly erroneous, are sufficient to refute Albright's claim. Alongside the "extensive" use of peer-reviewed practices, the use of sensory integration techniques, which were specifically recommended by Child Doe's occupational therapist, did not deny Child Doe a FAPE. Cf. Bradley, 443 F.3d at 975 ("[T]he Act does not require 'the furnishing of every special service necessary to maximize each handicapped child's potential.'" (quoting Bd. of Educ. v. Rowley, 458 U.S. 176, 199 (1982))).

Albright next argues that the IEP's failure to produce any academic progress denied Child Doe a FAPE. Albright notes that despite being in fourth grade, Child Doe was still instructed on kindergarten-level subject matter. She also argues that Child Doe's score in IQ testing had decreased between 2010 and 2014. As a preliminary matter, Albright's due process complaint concerns the period between

November 2013 and October 2014. Evidence pertaining to Child Doe's performance over a four-year period is thus overbroad and does not establish that she was denied a FAPE during the period in question. Belk testified that Child Doe appeared to be improving academically. The District supports her testimony with standardized tests administered periodically throughout 2014 that show Child Doe's progress during the period at issue. The testing revealed that Child Doe's scores in English, Reading, and Math increased between January 2014 and August 2014. Although the test scores varied within the period, in total they demonstrate academic improvement. See Bradley, 443 F.3d at 973 (upholding factual finding of academic improvement based on standardized test scores). Tests on first-grade subject matter administered in October 2014, however, revealed that Child Doe was not yet prepared to advance to more complex material.

The hearing officer observed in his decision that Albright believed Child Doe was capable of greater academic achievements than the assessments indicated. The district court echoed that sentiment, finding that "[i]t is also undoubtedly true that Ms. Albright disagrees with other members of Child Doe's IEP team about what Child Doe's true academic potential is." July 5 Order, at 9. However regrettable the disagreement between Albright and the remainder of the IEP team on this matter, the IDEA requires that an IEP be "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." Endrew F., 137 S. Ct. at 999. The "IDEA does not require that a school either maximize a student's potential or provide the best possible education at public expense." Fort Zumwalt Sch. Dist. v. Clynes, 119 F.3d 607, 612 (8th Cir. 1997). Based on the results of the District's testing, Child Doe made progress in a curriculum that was appropriate in light of her circumstances.

Finally, Albright contends that she was denied the opportunity to meaningfully participate in the formation of Child Doe's IEP. "The Act contemplates that [IEP drafting] will be informed not only by the expertise of school officials, but also by the

input of the child's parents or guardians." Endrew F., 137 S. Ct. at 999. Although parents generally must be afforded the opportunity to participate in every IEP meeting, a meeting may be conducted without them "if the public agency is unable to convince the parents that they should attend." 34 C.F.R. § 300.322(d) (2006); see Lathrop R-II Sch. Dist. v. Gray, 611 F.3d 419, 427 (8th Cir. 2010). As the district court found, voluminous evidence in the record demonstrates Albright's extensive involvement throughout the IEP process. Albright argues, however, that the IEP team conspired to hold an IEP meeting without her on September 15, 2014. But as the record clearly reveals, Albright chose not to attend the September 15 meeting despite the District's efforts to persuade her to attend. Moreover, to the extent there was a technical violation of the Act's notice requirements, "it did not affect the IEPs or otherwise deprive [Child Doe] of educational benefit." Id. The District did not prevent Albright's active participation in the IEP process.[3]

In sum, "a profoundly toxic lack of trust" between Albright and the District has rendered it nearly impossible for the parties to agree on an education program best suited for Child Doe's needs, despite both parties' seemingly earnest desire to provide just that. July 5 Order, at 9. Nonetheless, having found no clear error in the district court's factual findings and having given due weight to the hearing officer's credibility determinations, we conclude that Child Doe was not denied a FAPE.

---

[3]Although Albright also appears to argue that the District withheld information from her, she does not point to anything in the record to which she was entitled but which was originally withheld from her. She seems to argue instead that the District failed to keep adequate records regarding Child Doe's behavior, thus denying her access to information. See, e.g., Appellant's Br. 19 ("This caution points to the District's real failure – it never gathered any data to evaluate the effectiveness of sensory integration or the January 2013 BIP."). In light of our conclusion that Child Doe's IEP was adequate, the District's record-keeping practices did not result in the denial of a FAPE.

-10-

Albright appeals the district court's denial of her motions for extensions of time and her motion to accept her summary judgment response out of time. A district court has "considerable discretion" to grant or deny a party's motion for an extension of time to file a summary judgment response. See Soliman v. Johanns, 412 F.3d 920, 921-22 (8th Cir. 2005). A court may grant a party's timely motion for an extension upon a showing of good cause, see Fed. R. Civ. P. 6(b)(1)(A), or may for good cause grant a party's request for an extension of time "after the time has expired if the party failed to act because of excusable neglect," id. 6(b)(1)(B). The district court found that Albright had not shown good cause for an extension prior to the deadline, instead finding "contumacious . . . disregard for deadlines and procedural rules" in light of Albright's repeated failure to meet deadlines throughout the case. D. Ct. Order of September 15, 2017, at 4 (quoting Johnson v. Dayton Elec. Mfg. Co., 140 F.3d 781, 784 (8th Cir. 1998) (concluding that "[w]e have rarely, if ever, excused" contumacious disregard for deadlines)). "The primary measure of good cause is the movant's diligence" in attempting to meet deadlines. Rahn v. Hawkins, 464 F.3d 813, 822 (8th Cir. 2006) (considering motion to amend pleadings under Rule 16(b)). "We generally 'will not consider prejudice [to the nonmovant] if the movant has not been diligent . . . .'" Hartis v. Chicago Title Ins. Co., 694 F.3d 935, 948 (8th Cir. 2012) (first alteration in original) (quoting Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 717 (8th Cir. 2008)).

Albright argues that she had established good cause by providing evidence of her counsel's busy work schedule and her counsel's need to attend to family health concerns. Albright requested a three-week extension after twelve of her fourteen days to respond had elapsed, explaining, in part, that her counsel had many upcoming obligations in other cases. She did not explain, however, why she could not have completed her response in the preceding twelve days, nor did she provide evidence of any diligent efforts on her counsel's part to meet the original deadline, such as attempting to reschedule upcoming obligations. The district court thus did not abuse its discretion in denying Albright's motions prior to the deadline.

-11-

Although Albright's counsel thereafter attempted with some diligence to complete her response, her filing it ten days after the deadline did not create good cause where none previously existed. Nor could Albright establish excusable neglect if good cause were found. Excusable neglect encompasses four factors: prejudice to the non-moving party, the length of the delay, the movant's good faith, and the reason for the delay. See In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig., 496 F.3d 863, 866-67 (8th Cir. 2007) (citing Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. P'ship, 507 U.S. 380, 395 (1993)). The reason for the delay is a key factor in the analysis. Id. at 867. Albright argues that "[w]hat the district court describes as a lack of diligence could just as easily be described as a 'mistake' by counsel in managing her caseload, and thus, should be considered excusable neglect." Appellant's Br. 35. We disagree, as we have previously held that preoccupation with other hearings does not constitute excusable neglect. See Hawks v. J.P. Morgan Chase Bank, 591 F.3d 1043, 1048 (8th Cir. 2010). In addition, the district court found that Albright had not acted in good faith, having made little effort to meet the original deadline despite the court's repeated warnings. We conclude that Albright's late filing was not excusable, notwithstanding the relative insubstantiality of the delay and of the danger of prejudice to the District.[4] The district court thus did not abuse its discretion in denying Albright's motion and striking her response.

The district court concluded that Albright had failed to exhaust her administrative remedies with regard to the majority of her allegations that arose outside the period covered by her third due process complaint. The claims arising before November 2013 had been resolved by settlement agreement, rather than by way of a due process hearing. Albright argues that settlement constitutes exhaustion

---

[4]Albright argues that the district court should have explicitly analyzed the Pioneer factors. Such a failure "does not mandate an automatic reversal." Guidant, 496 F.3d at 866 n.3. The district court's decision to focus on the reason for delay and Albright's bad faith was "reasonable under the facts of this case." Gibbons v. United States, 317 F.3d 852, 854 n.4 (8th Cir. 2003).

under the IDEA, or, in the alternative, that exhaustion in her case would have been futile.[5] We have not heretofore decided whether settlement constitutes exhaustion under the IDEA. We review *de novo* whether exhaustion of administrative remedies was required. See J.M. v. Francis Howell Sch. Dist., 850 F.3d 944, 947 (8th Cir. 2017).

The IDEA requires a claimant to exhaust her administrative remedies at the state level before filing a civil suit under its provisions. See 20 U.S.C. § 1415(i)(2)(A). Had Albright sought to sue only under the IDEA, subsection (i) would have required that she be "aggrieved by the findings and decision made under subsection (f)." Id. Subsection (f) sets forth the requirements for impartial due process hearings. Because Albright filed suit under other laws in addition to the IDEA, however, she was required to exhaust the administrative procedures "under subsections (f) and (g) . . . to the same extent as would be required had the action been brought under [the IDEA]."[6] Id. at § 1415(l). Subsection (g), which governs state administrative appeals, does not apply here.

Albright was thus required to exhaust the procedures set forth in subsection (f) to the same extent required by subsection (i), which by its plain language permits appeals only from "the findings and decision" resulting from a due process hearing. Id. at § 1415(i)(2). It necessarily follows that like-extent exhaustion requires the

---

[5] Albright also argues that even if her pre-November 15, 2013, claims are barred for failure to exhaust, materials in the record from that period nonetheless support her remaining claims because those materials would be admissible at trial. See Fed. R. Civ. P. 56(c). We need not consider this argument, because once it struck Albright's summary judgment response, the district court considered only the record materials cited by the District.

[6] Albright does not contest the district court's determination that her allegations concerned the denial of a FAPE. See 20 U.S.C. § 1415(l); Fry v. Napoleon Comm. Schs., 137 S. Ct. 743, 752 (2017).

entry of administrative findings and a decision. A pre-decision settlement thus fails to satisfy the IDEA's requirements.

Albright argues that this reading is inconsistent with Congress's purported intent to encourage settlement, particularly in light of the IDEA's 2004 amendment allowing claimants the option of mediating their claims. As the Tenth Circuit held, however, when rejecting this same argument in A.F. ex rel. Christine B. v. Española Public Schools, 801 F.3d 1245 (10th Cir. 2015), "the terms of the statute are clear and unambiguous." Id. at 1249 (quoting United States v. Sprenger, 625 F.3d 1305, 1307 (10th Cir. 2010)). Moreover, "there is nothing remotely implausible about the 'policy' result the plain language dictates." Id. at 1250 ("[W]e can easily imagine a rational Congress . . . taking one of many possible intermediate positions by requiring those who wish to forego a mediated IDEA settlement to exhaust (or prove futile) all of the administrative grievance processes available to them before bringing any related federal lawsuit."); see also Endrew F., 137 S. Ct. at 1001-02 ("By the time any dispute reaches court, school authorities will have had a complete opportunity to bring their expertise and judgment to bear on areas of disagreement.").

Although we have recognized the futility exception to administrative exhaustion requirements, see J.B. ex rel. Bailey v. Avilla R-XIII Sch. Dist., 721 F.3d 588, 594 (8th Cir. 2013), we do not address its application here because Albright did not attempt to raise the issue before the district court. See Kountze ex rel. Hitchcock Found. v. Gaines, 536 F.3d 813, 818 (8th Cir. 2008) (refusing to consider issue raised for the first time on appeal where the record on the claim was not developed below). Because we conclude that Albright's claims are barred for failure to exhaust, we likewise do not address the District's argument that those claims were released by the settlement agreements, nor Albright's argument that the District breached the settlement agreements.

Finally, Albright appeals the district court's grant of summary judgment to the District on her claims of retaliation against herself and Child Doe in violation of § 504 of the Rehabilitation Act. We review *de novo* the district court's grant of summary judgment. Anderson v. Durham D & M, L.L.C., 606 F.3d 513, 518 (8th Cir. 2010). To establish a prima facie case of retaliation under § 504, Albright must show that she was "engaged in protected activity, the School District took some adverse action, and a causal connection between the activity and the District's action." Bradley, 443 F.3d at 976.

Albright argues that she provided evidence of twelve adverse actions taken against her and three taken against Child Doe, in support of which she cites materials contained in her stricken summary judgment response. Moreover, many of her allegations fall outside the due process period and have not been exhausted. The district court determined that Albright's complaint raised only six allegations of harm against her or Child Doe that were properly exhausted or did not require exhaustion. Those six allegations were:

> (1) District personnel filed false allegations of child abuse against Ms. Albright; (2) District personnel subjected Child Doe to strip searches for recording devices that Ms. Albright had hidden on her; (3) Ms. Atkinson generally endeavored to discredit Ms. Albright with District personnel and filed false police reports against her; (4) Ms. Belk failed to implement evidence-based practices when designing behavioral interventions and strategies for Child Doe; (5) Child Doe was denied access to remedial instruction on account of her disability; and (6) the District held a meeting on September 5, 2014, at which the [D]istrict attempted to change Child Doe's IEP without Ms. Albright attending or having been given notice.

July 5 Order, at 21-22 (citations omitted). Having struck Albright's summary judgment response, the district court deemed admitted or undisputed all factual assertions made by the District in support of its summary judgment motion.

-15-

Albright's first three allegations are refuted by the District's undisputed factual assertions that no false reports of child abuse were filed against Albright, that Child Doe was never strip-searched, and that no false police reports were filed against Albright. The latter three allegations are simply restatements of Albright's IDEA claims. Because of our decision that the District did not violate the IDEA, "a retaliation suit under § 504 based on IDEA violations is precluded." Bradley, 443 F.3d at 977. The District was thus entitled to summary judgment on Albright's retaliation claims.

The judgment of the district court is affirmed.

_____