# United States Court of Appeals

## For the Eighth Circuit

_____

No. 22-3137

_____

Osseo Area Schools, Independent School District No. 279

*Plaintiff - Appellant*

v.

A.J.T., by and through her parents, A.T. and G.T.

*Defendant - Appellee*

------------------------------

Minnesota Administrators for Special Education; Minnesota Association of School Administrators; Minnesota Association of Secondary School Principals; Minnesota School Boards Association

*Amici on Behalf of Appellant(s)*

The Arc of the United States; Minnesota Disability Law Center; Council of Parent Attorneys and Advocates, Inc.; The Judge David L. Bazelon Center for Mental Health Law

*Amici on Behalf of Appellee(s)*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: October 18, 2023
Filed: March 21, 2024

_____

Before GRUENDER, STRAS, and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

Because of her disability, A.J.T. cannot attend school before noon. Her parents asked Osseo Area Schools (the District) to provide evening instruction, but believing it had no obligation to educate A.J.T. outside of regular school hours, the District refused. The district court[1] concluded that this denied A.J.T. a "free appropriate public education" (FAPE). The District appeals, and we affirm.

I.

A.J.T. has a rare form of epilepsy and requires assistance with everyday tasks like walking and toileting. She has seizures throughout the day, and they are so frequent in the morning that she can't attend school before noon. But she's alert and able to learn until about 6:00 p.m.

Before moving to Minnesota in 2015, A.J.T.'s Kentucky school district provided an individualized education program (IEP), *see* 20 U.S.C. § 1414(d), that included evening instruction at home. But the District wasn't as accommodating. Year after year, it denied A.J.T.'s parents' requests for evening instruction with a series of shifting explanations. The first year, it claimed that state law does not require it. The next year, it said it needed to avoid setting unfavorable precedent for itself and other districts. And later, it said that the home environment would be too restrictive and that it needed "data to substantiate this programming change."

_____

[1]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

-2-

From 2015 to 2018, while A.J.T. was in elementary school, the District provided intensive one-on-one instruction for 4.25 hours each school day.[2] Then, in 2018, the District prepared for A.J.T. to enter middle school. The middle school's standard day ended at 2:40 p.m., so the District proposed cutting back her day to about 3 hours. Despite the even shorter day, it again rejected her parents' request for evening instruction. It also rejected their various proposals to at least maintain her 4.25-hour day, including a proposal to continue keeping her at the elementary school.

Realizing that an agreement was beyond reach, A.J.T.'s parents filed a complaint with the Minnesota Department of Education. Their complaint kept A.J.T.'s 4.25-hour school day in place under the "stay-put" provision of the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1415(j); *see also Hale ex rel. Hale v. Poplar Bluff R–I Sch. Dist.*, 280 F.3d 831, 833 (8th Cir. 2002) (per curiam), and led to a due process hearing before an administrative law judge (ALJ), *see* 20 U.S.C. § 1415(f)(1)(A).

After a five-day evidentiary hearing, the ALJ concluded that the District had denied A.J.T. a FAPE. The ALJ found that District officials improperly made "maintain[ing] the regular hours of the school's faculty" the "prevailing and paramount consideration" over A.J.T.'s needs and ordered the District to provide 495 hours of compensatory education and add certain services to her IEP, including at-home instruction from 4:30 p.m. to 6:00 p.m. each school day.

---

[2]The District initially offered instruction from 12:00 p.m. to 4:00 p.m.—the elementary school's standard end time. But A.J.T.'s parents picked her up at 3:30 p.m. each day because they were concerned about her safety navigating the halls while other students were being dismissed, so the District later extended her school day by 15 minutes.

The District sought judicial review, *see id.* § 1415(i)(2)(A), and after receiving the administrative record and providing an opportunity to present additional evidence, the district court agreed with the ALJ, *id.* § 1415(i)(2)(C); *see also Minnetonka Pub. Schs., Indep. Sch. Dist. No. 276 v. M.L.K. ex rel. S.K.*, 42 F.4th 847, 852 (8th Cir. 2022) (standard of review in the district court). Specifically, the court found that after moving to the District, A.J.T. made progress in several areas like her desire and intent to communicate, use of eye gaze technology, ability to feed herself, and handwashing. But her overall progress was *de minimis*, and she regressed in other areas like communicating using hand signs, initiating and returning greetings using a prerecorded button switch, and toileting. The court also found that A.J.T. would have made more progress if she had received evening instruction and that a three- or four-hour school day was insufficient to pursue many expert-recommended goals. Ultimately, the court concluded that the District did not meet its burden to show that the ALJ erred in finding that the District denied A.J.T. a FAPE. *See E.S. v. Indep. Sch. Dist., No. 196, Rosemount–Apple Valley–Eagan*, 135 F.3d 566, 569 (8th Cir. 1998) (burden of proof).

## II.

Under the IDEA, children with disabilities are entitled to a FAPE. 20 U.S.C. § 1412(a)(1)(A). To get there, school districts must identify and evaluate a student's need for special education services and work with a team—which typically includes teachers, school officials, and the student's parents—to create an annual IEP. *Id.* § 1414(a)–(d). The IEP must include a statement of the student's academic and functional performance, describe how her disability affects her learning, set out measurable goals, and track her progress. *Id.* § 1414(d)(1)(A)(i)(I)–(III); *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE–1*, 580 U.S. 386, 391 (2017). And to be substantively adequate, it must be "tailored to the unique needs" of the individual student and "appropriately

ambitious," meaning it must be "reasonably calculated to enable a child to make progress appropriate in light of [her] circumstances" and give her a "chance to meet challenging objectives." *Endrew F.*, 580 U.S. at 401–04 (citation omitted).

Judicial review in IDEA cases "is, in reality, quite narrow." *Petersen v. Hastings Pub. Schs.*, 31 F.3d 705, 707 (8th Cir. 1994). Courts are limited to reviewing whether the school district followed the IDEA's procedures and whether the student's IEP provided a FAPE. *Id.* (quoting *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206–07 (1982)). A district court must "make an independent decision, based on a preponderance of the evidence, whether the IDEA was violated," but it "must nonetheless give due weight to the administrative proceedings." *M.L.K.*, 42 F.4th at 852 (citation omitted). On appeal, we review the district court's factual findings for clear error and its determination of whether the school provided a FAPE *de novo*. *Id.*

As an initial matter, we reject the notion that the IDEA's reach is limited to the regular hours of the school day. Neither the District nor *amici* identify anything in the IDEA implying—let alone stating—that a school district is only obligated to provide a FAPE if it can do so between the bells. So we wade into the finer details of A.J.T.'s IEPs to determine whether she received a FAPE despite the short day.

Several things convince us that she did not: First, A.J.T. made *de minimis* progress overall. Second, she regressed in toileting, and at one point, the District even removed the toileting goal from her IEP because there was not enough time in the short school day. And third, A.J.T. would have made more progress with evening instruction. The District disputes each point, so we discuss them in turn.

-5-

A.

The District argues that the district court clearly erred in finding that A.J.T.'s overall progress was *de minimis*. It says that her progress was significant in "many" areas and that even minimal progress was "remarkable" given her disability. We are unconvinced.

The District cites only slight progress in a few areas, and even one of the District's own experts agreed that A.J.T.'s progress was minimal. According to the District's progress reports, A.J.T. met none of her annual goals in 2016 or 2017. By the end of 2018, she had met a few short-term objectives[3] but still hadn't met any annual goals. The record contains no progress reports for 2019. And in 2020, she again met only a few objectives and not a single goal. Based on this, the district court did not clearly err in finding that A.J.T.'s overall progress was *de minimis*.

A.J.T.'s limited progress is strong evidence that the District denied her a FAPE,[4] as a student making "merely more than *de minimis* progress from year to

---

[3]A.J.T.'s progress reports consist of multiple "annual goals," each of which include several "short term objectives."

[4]The District says that we should nonetheless ignore A.J.T.'s *de minimis* progress overall and her regression in toileting because "[a]n IEP is a snapshot, not a retrospective, and we must take into account what was, and was not, objectively reasonable when the snapshot was taken, that is, at the time the IEP was promulgated." *K.E. ex rel. K.E. v. Indep. Sch. Dist. No. 15*, 647 F.3d 795, 808 (8th Cir. 2011) (cleaned up) (citation omitted). But here, the District had more and more information about A.J.T.'s instructional needs and insufficient progress each year. This is not a case where it only became apparent that the student's IEP was inappropriate after the fact. *Cf. id.* (holding that "it would be improper for us to judge [the student's] IEPs in hindsight" because the school district had "contradictory information about whether [the student] suffered from bipolar disorder" when it drafted them). Rather, A.J.T.'s limited progress and regression was both predictable

year can hardly be said to have been offered an education at all." *Endrew F.*, 580 U.S. at 402–03 (cleaned up) (holding that the FAPE standard is "markedly more demanding").

B.

The District also quibbles with the district court's findings that A.J.T. regressed in toileting and that the District removed her toileting goal for lack of time. It questions whether A.J.T. ever had success voiding on the toilet and claims that the IEP team removed the toileting goal in 2017 because it didn't expect that she could make any progress. The record tells a different story.

A behavior analyst who worked with A.J.T. in Kentucky testified that she was voiding on the toilet 45% of the time by the end of their work together, and A.J.T.'s father testified that when they moved to the District, she was voiding on the toilet 50% of the time at home and was making progress voiding on the toilet at school. By 2016, District records noted that A.J.T. was having "some successes" voiding on the toilet but was not meeting her goal of a 50% success rate. Then, in 2017, District officials observed that A.J.T.'s success was "inconsistent" and decided to cut the goal "due to the time constraint of [her] shortened day." The next year, the District changed course and reinstated the goal, noting her "need for instruction in activities of daily living" and that "[w]ith fewer trips to the bathroom," she was now having "minimal success." The District's records are clear that A.J.T. regressed in toileting and that it removed her toileting goal for lack of time in the short day—not for lack of ability to improve.

---

and known, so it is properly considered as an "important factor" in our analysis. *See C.B. ex rel. B.B. v. Special Sch. Dist. No. 1*, 636 F.3d 981, 989 (8th Cir. 2011) (citations omitted).

A.J.T.'s toileting ability is essential for her to live a healthy and dignified life, and the District's failure to take steps to address that goal violated its obligation to provide a FAPE.

C.

Finally, the District says that the district court erred by considering expert testimony that A.J.T. would have benefitted from evening instruction because doing so amounted to requiring it to "maximize a student's potential or provide the best possible education at public expense." *Albright ex rel. Doe v. Mountain Home Sch. Dist.*, 926 F.3d 942, 950 (8th Cir. 2019) (citation omitted).

But asking whether A.J.T. would have made more progress with evening instruction isn't about maximizing her potential—it's about whether the District's purely administrative decision not to provide evening education caused her *de minimis* progress and regression. *Cf. M.L.K.*, 42 F.4th at 852–54 (reasoning that the school district did not violate the IDEA by failing to identify the student's most debilitating disabilities because its failure did not cause any lack of progress); *Indep. Sch. Dist. No. 283 v. S.D. ex rel. J.D.*, 88 F.3d 556, 562 (8th Cir. 1996) (holding that there is no IDEA violation when an IEP's procedural inadequacies are harmless). The expert testimony shows that the District's choice to prioritize its administrative concerns had a negative impact on A.J.T.'s learning.

Considering that A.J.T. made *de minimis* progress overall, that she regressed in toileting, and that she would have made more progress with evening instruction, we see no error in the district court's conclusion that the District denied her a FAPE. None of the District's explanations for refusing to provide evening instruction have ever been grounded in A.J.T.'s individual needs, as required by the IDEA. And it still has not offered a "cogent and responsive explanation for [its] decisions" showing that A.J.T.'s IEPs were "reasonably calculated to enable

[her] to make progress appropriate in light of [her] circumstances." *Endrew F.*, 580 U.S. at 404.

## III.

We affirm the district court's judgment.

_____