# United States Court of Appeals

## For the Eighth Circuit

_____

No. 22-3506

_____

Charles Kass, Parent/Guardian; Lisa Kass, Parent/Guardian; Brody Kass

*Plaintiffs - Appellants*

v.

Western Dubuque Community School District; Keystone Area Education Agency

*Defendants - Appellees*

------------------------------

American Civil Liberties Union of Iowa; Council of Parent Attorneys and Advocates, Inc.; National Disability Rights Network

*Amici on Behalf of Appellants*

_____

Appeal from United States District Court
for the Northern District of Iowa

_____

Submitted: September 20, 2023
Filed: May 10, 2024

_____

Before COLLOTON,[1] GRASZ, and KOBES, Circuit Judges.

_____

[1]Judge Colloton became chief judge of the circuit on March 11, 2024. *See* 28 U.S.C. § 45(a)(1).

GRASZ, Circuit Judge.

Charles and Lisa Kass, parents of Brody Kass, sued the Western Dubuque Community School District (the District). They alleged the District violated the Individuals with Disabilities Education Act (IDEA) and other statutes when it developed Brody's individualized education program (IEP) for the 2020–21 school year. The district court[2] found that the District complied with the law; the Kasses dispute that conclusion on appeal. We affirm.

## I. Background

Brody Kass has epilepsy, autism, attention deficit/hyperactivity disorder, severe vision impairment, and intellectual disabilities. Due to his disabilities, IDEA entitles Brody to a free appropriate public education (FAPE). *See* 20 U.S.C. §§ 1401(3)(A), 1412(d)(1)(A). IDEA also requires school districts to create and implement IEPs for disabled students. *See id.* § 1414(d)(2)(A). An IEP Team—composed of the student's parents, teachers, and administrators—is responsible for the IEP's development. *See id.* § 1414(d)(1)(B), (d)(3).

Brody attended District schools from kindergarten through the fifth grade, moved elsewhere for a period, and returned during the ninth grade. During his senior year of high school in 2019–20, Brody attended classes full time in the high school and accumulated the requisite number of credits for graduation.

Despite Brody having enough credits to graduate, his IEP Team determined he had unmet transitional needs and should remain in school. The IEP Team met four times over the course of the 2019–20 school year to develop an IEP for the 2020–21 school year. After a meeting in May 2020, the IEP Team began to draft the IEP.

---

[2]The Honorable Leonard T. Strand, then Chief Judge, now United States District Judge for the Northern District of Iowa.

The District proposed that Brody would not enroll in general education courses in the traditional classroom setting. Instead, Brody would spend a half-day focusing on developing his reading and math skills through individualized and practical training. The goal was to prepare Brody for his transition into a work environment.

The draft IEP's daily schedule included two hours of specially designed instruction at the school or in the community, followed by work with a job coach at a commercial establishment. The District would then provide Brody with transportation to the Kass residence, a day care center, or a day habilitation facility, where he would spend the afternoon.

The Kasses received the draft IEP in July 2020. The Kasses objected to the proposed IEP and filed a complaint with the Iowa Department of Education under 20 U.S.C. § 1415(b)(6). The family alleged the District failed to provide Brody with a FAPE during the 2018–19 and 2019–20 school years, and that the proposed IEP from May 2020 would not provide Brody with a FAPE during the 2020–21 school year.

During the administrative proceedings, the Kasses invoked their so-called "stay-put" rights under the IDEA, which allowed Brody to remain in his then-current educational placement for the 2020–21 school year and during the litigation. *See id.* § 1415(j).

In April 2021, the administrative law judge (ALJ) ruled in favor of the District on all claims. The ALJ concluded the District did not violate Brody's right to a FAPE in the 2018–19 or 2019–20 school years. The ALJ also determined neither the draft IEP nor its development violated any procedural or substantive provisions of the IDEA.

The IDEA and Iowa law require the provision of a FAPE until the end of the academic year of a student's twenty-first birthday. 20 U.S.C. § 1412(a)(1)(B)(i);

Iowa Code § 256B.2(1)(a), (2)(a). Because Brody turned twenty-one in November 2022, and the parties were still in litigation through the end of the 2022–23 school year, Brody completed his high school education entirely under his former IEP because of the statute's stay-put provision. The disputed draft IEP from May 2020 never went into effect.

The Kasses brought this action in federal district court, alleging violations of the IDEA, the Americans with Disabilities Act (ADA), and the Rehabilitation Act. In November 2022, the district court affirmed the ALJ's decision on the IDEA claims and dismissed the other claims as subsumed under the IDEA claims. On appeal to this court, the Kasses no longer challenge Brody's education during 2018–19 and 2019–20, nor do they appeal the dismissal of their ADA claim. They only advance their claims that the May 2020 IEP and its development process violated the IDEA and § 504 of the Rehabilitation Act.

## II. Analysis

### A. Mootness

Before reaching the merits, we must first determine whether this case is moot because Brody is now twenty-two years old and past the qualifying age for a FAPE under the IDEA. "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Kennedy Bldg. Assocs. v. Viacom, Inc.*, 375 F.3d 731, 745 (8th Cir. 2004) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). This happens when, "during the course of litigation, the issues presented in a case 'lose their life because of the passage of time or a change in circumstances . . . . and a federal court can no longer grant effective relief[.]'" *Haden v. Pelofsky*, 212 F.3d 466, 469 (8th Cir. 2000) (omission in original) (quoting *Beck v. Mo. State High Sch. Activities Ass'n*, 18 F.3d 604, 605 (8th Cir. 1994)).

After the draft IEP from May 2020 was prepared, the Kasses invoked their stay-put rights to have Brody educated under a former IEP through age twenty-one, and the May 2020 IEP never took effect. Brody is now twenty-two years old and past the qualifying age for a FAPE under the IDEA. The question before us is whether compensatory education may be available beyond a student's twenty-first birthday.

We have previously held that compensatory education is a valid restorative remedy, even after a student has left the district, to make up the years when a student was eligible for a FAPE. *See, e.g.*, *Indep. Sch. Dist. No. 284 v. A.C. ex rel. C.C.*, 258 F.3d 769, 774–75 (8th Cir. 2001); *Indep. Sch. Dist. No. 283 v. E.M.D.H.*, 960 F.3d 1073, 1085 (8th Cir. 2020). We have also held that compensatory education may be used for additional educational services. *See Miener v. Missouri*, 800 F.2d 749, 753 (8th Cir. 1986) (holding the plaintiff was entitled to recover compensatory educational services rather than just retroactive reimbursements because "Congress did not intend the . . . entitlement to a *free* education to turn upon [the] parent's ability to 'front' its costs").

We now join our sister circuits and hold that compensatory education may be available beyond a student's twenty-first birthday. *See, e.g.*, *Pihl v. Mass. Dep't of Educ.*, 9 F.3d 184, 189 (1st Cir. 1993) ("[C]ompensatory education must be available beyond a student's twenty-first birthday."); *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 249 (3d Cir. 1999) ("An award of compensatory education allows a disabled student to continue beyond age twenty-one in order to make up for the earlier deprivation of a free appropriate public education."); *Bd. of Educ. of Oak Park v. Ill. State Bd. of Educ.*, 79 F.3d 654, 656 (7th Cir. 1996) (noting the IDEA "empowers a court to order adult compensatory education if necessary to cure a violation"); *Jefferson Cnty. Bd. of Educ. v. Breen*, 853 F.2d 853, 857 (11th Cir. 1988) ("Compensatory education, like retroactive reimbursement, is necessary to preserve a handicapped [student's] right to a free education.").

As the First Circuit noted in *Pihl*, if compensatory education is not an available remedy beyond a student's twenty-first birthday, "school districts simply could stop providing required services to older teenagers, relying on the Act's time-consuming review process to protect them from further obligations." *Pihl*, 9 F.3d at 189. *See also Breen,* 853 F.2d at 858 ("[P]roviding a compensatory education should serve as a deterrent against states unnecessarily prolonging litigation in order to decrease their potential liability."). Such a situation would thwart IDEA's remedial goals. *See, e.g.*, *A.C., ex rel C.C.*, 258 F.3d at 774–75 ("The remedy sought is compensatory. It does not matter whether the District has any present or future obligation to develop a new IEP for her or to give her further hearings."); *E.M.D.H.*, 960 F.3d at 1085 ("Because of this backward-looking nature, the purpose of any compensatory-education award is restorative . . . .").

A fundamental premise of the IDEA is that a student's educational needs change frequently—that is why a student's IEP needs annual updates. *See* 20 U.S.C. § 1414(d)(1)(A)(i)(VIII), (d)(4). When a stay-put IEP is in place, that IEP is frozen throughout the litigation's course—often for several years. The stay-put provision "operates as an automatic statutory injunction" against implementation of the new IEP. *See Patrick G. ex rel. Stephanie G. v. Harrison Sch. Dist. No. 2*, 40 F.4th 1186, 1192 (10th Cir. 2022) (internal quotations omitted). It keeps the old IEP—"the lesser of two evils"—in place until a resolution is reached; but the stay-put does not provide "relief on the merits" unless the student seeks nothing more than the injunction itself. *Compare Maine Sch. Admin. Dist. No. 35 v. Mr. & Mrs. R.*, 321 F.3d 9, 18–19 (1st Cir. 2003) (holding compensatory education claim was not moot despite no legal claim on appeal that the old, stay-put IEP was also inadequate[3]) *with*

---

[3]The dissent asserts we "inaccurately cite[ ]" to *Maine School Administrative District No. 35* because "the plaintiffs in that case vociferously objected to a former IEP from 1999-2000," but the dissent is mistaken. The plaintiffs in that case did not pursue any claim on appeal as to the former IEP but only as to the IEP for the 2000–2001 school year. It is true the plaintiffs argued the former IEP, implemented in the 1999–2000 school year, was inadequate. *See Maine Sch. Admin. Dist. No. 35*, 321 F.3d at 12. But they still preferred the former IEP to the 2000–2001 IEP, and so they invoked the stay-put provision to keep the former IEP in place for the 2000–2001

*Moseley v. Bd. of Educ. of Albuquerque Pub. Schs.*, 483 F.3d 689, 694 (10th Cir. 2007) (finding case moot in light of the student's graduation because the "tenor of the entire complaint and proceedings" was "for injunctive relief").

Here, the Kasses continued to seek compensatory education for the 2020, 2021, and 2022 school years—the years in which the stay-put was in place. By maintaining a claim for compensatory education for the three stay-put school years, the Kasses necessarily alleged Brody was denied a FAPE throughout the pendency of the litigation. They sought more than just the full day of schooling Brody received under the stay-put IEP. They still wanted "appropriate measurable postsecondary goals," which Brody arguably did not receive under the stay-put IEP.[4] There remains a live controversy for compensatory education, and so we review this case on the merits.

## B. The IDEA Claim

We review de novo whether the District provided Brody with a FAPE under the IDEA, "affording due weight to the outcome of the [hearing officer's] decision and accepting the district court's factual findings as true unless they are clearly erroneous." *D.L. ex rel. Landon v. St. Louis City Sch. Dist.*, 950 F.3d 1057, 1064 (8th Cir. 2020).

―――――――――――

school year while pursuing their claim for compensatory education for the 2000–2001 school year. *Id.* at 12–13. Thus, only the 2000–2001 proposed IEP was the subject of the parents' claim on appeal.

[4]Indeed, the record supports the Kasses' assertion that they sought the development of an appropriate IEP for the 2020, 2021, and 2022 school years that differed from both the stay-put IEP and the May 2020 proposed IEP. In the summer of 2020, the Kasses filed a due process complaint, alleging that "Brody did not receive a free appropriate public education during the past two years" and that the draft IEP from May 2020 "will not provide Brody with FAPE."

The IDEA's principal purpose is to ensure all students with disabilities "have available to them a free appropriate public education." *Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154, 166 (2017) (quoting 20 U.S.C. § 1400(d)(1)(A)). A FAPE "consists of educational instruction specially designed to meet the unique needs" of the student and any services that are necessary to permit the student to benefit from the instruction. *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 188–89 (1982). An IEP then serves as the vehicle for providing a FAPE, *Fry*, 580 U.S. at 167, which ensures schools give appropriate educational instruction and related services to students with disabilities. *Id.* at 158.

The IDEA's legal requirements are fulfilled if (1) a school district complies with the law's procedures in developing an IEP, and (2) the resulting IEP is reasonably calculated to enable the student to make progress appropriate in light of the student's circumstances. *See A.C., ex rel. C.C.*, 258 F.3d at 773; *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 403 (2017). We conclude the district court properly held the District met both requirements in the May 2020 IEP.

### i. The District Complied with the IDEA's Procedures

The Kasses claim the May 2020 IEP violated IDEA's procedures because (1) the parents did not participate in the meeting where the content of the IEP was discussed, and (2) there were no general education classes available to Brody. Both claims are unpersuasive. The district court correctly held that the District complied with the IDEA's procedural requirements in drafting the May 2020 IEP.

### a. Parental Participation

Drafting an IEP requires the input of the student's parents. *Albright ex rel. Doe v. Mountain Home Sch. Dist.*, 926 F.3d 942, 948 (8th Cir. 2019). The IDEA requires school districts to consider "the concerns of the parents for enhancing the education of their child," and to address "information about the child provided to, or

-8-

by, the parents." *Fort Osage R-1 Sch. Dist. V. Sims ex rel. B.S.*, 641 F.3d 996, 1005 (8th Cir. 2011) (quoting 20 U.S.C. § 1414(d)(3)(A)(ii), (d)(4)(A)(ii)(III)).

An IEP is procedurally invalid "when a school district predetermines the educational program to be provided to a disabled student . . . prior to meeting with the parents and closes its mind to the concerns or evidence of the parents . . . ." *Id.* Such behaviors would inappropriately deprive the parents of the meaningful opportunity to participate in the IEP's formulation. *Id.*

On the other hand, the "IDEA does not mandate that parental preferences guide educational decisions." *M.M. v. Dist. 0001 Lancaster Cnty. Sch.*, 702 F.3d 479, 488 (8th Cir. 2012). Accordingly, there is no procedural error when there is "an express finding that the School District was willing to listen to the [parents'] evidence and concerns and work with them when drafting all of [the student's] IEPs." *Sims ex rel. B.S.*, 641 F.3d at 1005.

In this case, the District did not predetermine Brody's IEP, as it "participated in numerous meetings" with Brody's parents. *See M.M.*, 702 F.3d at 488–89 (noting no procedural issue when the school district "participated in numerous meetings with [the students'] parents"). The IEP Team involved Brody's parents in meetings leading up to the May 2020 IEP and documented the parents' concerns for enhancing Brody's education. And the contentious topic of reduced school days "was discussed in IEP . . . materials as early as October 24, 2019."

The District also involved the Kasses in finalizing the May 2020 IEP. In July 2020, the District sent the Kasses the May 2020 IEP and Prior Written Notice, noting it had provided a draft IEP. The email stated: "This is what we intend to have in place at the start of the school year unless you request a meeting prior to this." But the Kasses did not request a meeting regarding the May 2020 IEP.

In sum, the record indicates the Kasses were involved in drafting the IEP. The district court did not err in finding the District has satisfied its obligation regarding parental involvement.

### b. General Education Classes

The Kasses claim the lack of general education classes in the May 2020 IEP procedurally violated the IDEA. However, the IDEA does not require "that parental preferences guide educational decisions," *M.M.*, 702 F.3d at 488, only that parental preferences are "consider[ed]" and "address[ed]," *see Sims ex rel. B.S.*, 641 F.3d at 1005. Here, the district court found the IEP Team considered the Kasses' request "that [Brody] receive instruction in core academics . . . ." But this request "was rejected by the school team because the team believed focusing on functional skills for Brody in the community setting was more appropriate." The school team also considered the Kasses' suggestion that Brody "participate in art, P.E., sex education and lunch at the school," but rejected it because Brody had already taken these courses as required for graduation. Although the Kasses preferred Brody to be in general education classes, the District had no obligation to follow their preferences. *See M.M.,* 702 F.3d at 488.

The district court did not err in concluding there were no procedural violations in the May 2020 IEP based on a lack of general education classes.

### ii. The May 2020 IEP Substantively Provided a FAPE for Brody

Under the IDEA, if "progressing smoothly through the regular curriculum" is not a reasonable prospect for a student, then the student's "educational program must be appropriately ambitious in light of his circumstances, just as advancement from grade to grade is appropriately ambitious for most [students] in the regular classroom." *Endrew F. ex rel. Joseph F.*, 580 U.S. at 402. Every student "should have the chance to meet challenging objectives." *Id.*

However, "[a] FAPE does not necessarily fit precise parental preferences, maximize a student's potential, or provide the best possible education at public expense." *D.L. ex rel. Landon*, 950 F.3d at 1064. "The school is not required to provide an optimal experience for a student with a disability, but instead must simply provide the student with a FAPE consistent with the IEP." *Sneitzer v. Iowa Dep't of Educ.*, 796 F.3d 942, 948 (8th Cir. 2015).

Furthermore, our review under the IDEA is limited "[b]ecause judges are not trained educators . . . ." *E.S. v. Indep. Sch. Dist., No. 196, Rosemount-Apple Valley*, 135 F.3d 566, 569 (8th Cir. 1998). Therefore, we should not substitute our own notions of sound educational policy for those of the school authorities. *Albright*, 926 F.3d at 948. Our review is focused on whether an IEP is reasonable, not on whether the IEP is ideal. *Minnetonka Pub. Sch., Indep. Sch. Dist. No. 276 v. M.L.K. ex rel. S.K.*, 42 F.4th 847, 852 (8th Cir. 2022).

The Kasses claim the May 2020 IEP is substantively deficient because the shortened school days denied Brody substantive benefits derived from instruction in physical education, art, sex education, and lunch. But this overlooks how Brody has met all his graduation requirements in core academics. Moreover, a thorough reevaluation in 2020 examined Brody's entire education history, including all the methodologies utilized to teach him, which led the school team to make an individualized determination that he had only unmet transition needs.

Accordingly, the May 2020 IEP provided instruction in Brody's areas of need in both the school and community setting. The IEP involved: individualized instruction on functional math, reading, and writing skills; time with a job coach; and outings to community locations. Notably, the District did not simply shorten Brody's school day without providing additional services to fill in these gaps. Rather, the May 2020 IEP provided reading and math instruction to help Brody function in the community to the best of his ability. The IEP was designed to further address his employability skills, behavior goals, social interaction skills, and independent living skills.

Finally, the Kasses claim Brody's postsecondary goals are inadequate because they are not sufficiently measurable. This claim also fails. The May 2020 IEP reasonably addressed Brody's measurable progress in achieving his goals based on employability and behavior skills. As an example, the IEP described one of Brody's employability goals as to "increase his endurance to be able to participate and complete expected tasks for 60 minutes with adult assistance and no more than one 10 minute break in at least 80% of opportunities without a behavior incident that results in needing to leave early or quit working."

The IEP also addressed Brody's adaptive behavioral goals, which included monitoring progress "through completion of an adaptive behavior skills chart," which tracks Brody's level of independence with opportunities such as appropriate interaction with adults, completing necessary money transactions, and advocating for himself. Each opportunity is then rated on a scale of 0 to 3. Another behavioral goal encouraged Brody to "utilize his schedule and routines to complete his arrival routine (at school or work) with up to 2 minutes of think time with no more than 1–2 verbal prompts."

In sum, we agree with the district court that the May 2020 IEP's specific and measurable goals were reasonably calculated to enable Brody to progress in light of his circumstances, and thus met the IDEA's requirements.

### III. Conclusion

We agree with the district court's conclusion that the May 2020 IEP was procedurally valid and substantively addressed Brody's unmet transition needs in employability and adaptive behavior. For the foregoing reasons, we affirm.

COLLOTON, Circuit Judge, dissenting.

I conclude that this appeal is moot and that the case should be dismissed. Where there is no live case or controversy, this court lacks jurisdiction to affirm the judgment of the district court.

The Kasses advance several arguments about why the draft individualized education program from May 2020 was inadequate and why the procedures used to develop that IEP were flawed. But after the IEP was prepared, the Kasses invoked their rights to have Brody educated under a former IEP through age 21, and the draft IEP never took effect. The Kasses do not assert that Brody was deprived of a free appropriate public education after the family invoked their right to "stay put" in a former IEP. Their principal complaint with the draft IEP was that the District scheduled Brody for only a half-day of education. By invoking their "stay-put" rights, however, the Kasses were able to obtain for Brody a full day of education for an additional three years. At this point, Brody is aged 22 years and is too old to qualify for a free appropriate public education under the IDEA. Any dispute about what the District would have provided under the draft IEP, or how that draft IEP was developed, is moot.

The Kasses contend that the case is not moot because they have a live claim for compensatory education. Compensatory education is a judicially created equitable remedy that a court may award under the IDEA. *See* 20 U.S.C. § 1415(i)(2)(C)(iii); *Ferren C. v. Sch. Dist. of Phila.*, 612 F.3d 712, 717-18 (3d Cir. 2010). This relief may be awarded to a student who is aged beyond 21 years where appropriate to compensate the student for rights that a school district violated earlier. The Kasses suggest that if the District's proposed IEP for 2020-21 would not have provided Brody with a FAPE, then they are entitled to an equitable remedy.

Even if the Kasses could establish that the proposed IEP for 2020-21 was inadequate, however, they are not entitled to compensation for use of an IEP that was never implemented. The Kasses did not argue in the district court or in their

briefs on appeal that the then-current IEP failed to provide Brody with a FAPE during 2020-21 and thereafter.  Rather, they acknowledge that the "stay-put" IEP "secured for Brody a full day of school for three years and academic classes which the District refused him."  Appellants' Br. 4.  There is thus no live controversy that could give rise to compensatory education.

The majority inaccurately cites a First Circuit decision for the proposition that a claim for compensatory education presents a live controversy even when there is "no legal claim on appeal that the old, stay-put IEP was also inadequate."  *Ante*, at 6.  The majority states that "only the 2000-2001 proposed IEP was the subject of the parents' claim on appeal" in that case.  *Ante*, at 6-7 n.3.  To the contrary, the plaintiffs in that case vociferously objected to a former IEP from 1999-2000 and argued on appeal that the former IEP—when carried forward as a "stay-put" IEP—was insufficient to provide a FAPE during 2000-01.  *Maine Sch. Admin. Dist. No. 35 v. Mr. R.*, 321 F.3d 9, 13-14, 18-19 (1st Cir. 2003).

The majority incorrectly suggests that the Kasses have disputed whether Brody received "appropriate measurable postsecondary goals" under "the stay-put IEP."  *Ante*, at 7.  The family's argument on that score was directed only to the draft IEP from May 2020.  Appellants' Br. 30-31 (arguing that "[t]he District denied Brody a FAPE *because the May 29, 2020 IEP* did not have appropriate measurable postsecondary goals") (emphasis added).  Where, as here, the plaintiffs do not argue that the extant IEP failed to provide a FAPE, and challenge only the adequacy of a draft IEP that was never implemented, the appeal is moot.  *Cf. Lillbask ex rel. Mauclaire v. State of Conn. Dept. of Educ.*, 397 F.3d 77, 88 & n.6 (2d Cir. 2005).

The Kasses do allege shortcomings in the District's procedures for developing the proposed IEP for 2020-21.  But as Brody was educated under a previous IEP that the Kasses do not challenge, they have no live claim that the alleged procedural deficiencies impeded Brody's right to a FAPE or caused a deprivation of educational benefits.  *See* 20 U.S.C. § 1415(f)(3)(E)(ii)(I), (III).  Compensatory education is not

-14-

an appropriate remedy for a procedural violation of the IDEA. *C.H. v. Cape Henlopen Sch. Dist.*, 606 F.3d 59, 66 (3d Cir. 2010).

The statute does provide that a court may find that a child did not receive a free appropriate public education if procedural inadequacies "significantly impeded the parents' opportunity to participate in the decisionmaking process." 20 U.S.C. § 1415(f)(3)(E)(ii)(II). There is no live controversy, however, about parental participation in developing an IEP for 2020-21. Brody received education during that school year under an IEP that the Kasses do not challenge, and there is no outstanding decisionmaking process in which to participate. A "compensatory" remedy would not redress any procedural injury from 2020. *See T.P. ex rel. T.P. v. Bryan Cnty. Sch. Dist.*, 792 F.3d 1284, 1293 (11th Cir. 2015). The Kasses' claim under § 504 of the Rehabilitation Act also seeks compensatory education based on an alleged denial of a FAPE under the proposed IEP, so that claim is likewise moot.

The Kasses argue in their reply brief that there is a live dispute regarding their entitlement to attorney's fees. The Kasses suggest that they were a prevailing party in this litigation because they succeeded in having Brody educated under his then-current educational placement as required by statute. *See* 20 U.S.C. § 1415(j). But an "interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990). And the Kasses did not file a timely motion for attorney's fees after entry of judgment in any event, *see* Fed. R. Civ. P. 54(d)(2), so there is no live dispute on any entitlement to fees.

_____